## EXHIBIT INDEX

State of California

- Provider Agreement(s)         Exhibit # A-1         Number of Pages:   8

- State Statutes                Exhibit # B-1         Number of Pages:   6

State of Indiana

- Provider Agreement(s)         Exhibit # A-2         Number of Pages:   4

- State Statutes                Exhibit # B-2         Number of Pages:  23

Commonwealth of Kentucky

- Provider Agreement(s)         Exhibit # A-3         Number of Pages:  21

- State Statutes & Regulations  Exhibit # B-3         Number of Pages:  17

Commonwealth of Virginia

- Provider Agreement(s)         Exhibit # A-4         Number of Pages:   1

- State Statutes                Exhibit # B-4         Number of Pages:   5

# MEDI-CAL PROVIDER AGREEMENT
## (To Accompany Applications for Enrollment or Continued Enrollment)*

**FOR STATE USE ONLY**

*Do not use staples on this form or on any attachments.*
*Type or print clearly in ink. If you must make corrections, please line through, date, and initial in ink.*
*Do not leave any questions, lines, etc. blank. Enter N/A if not applicable to you.*

Date  /  /

| Legal name of applicant or provider (hereinafter jointly referred to as "Provider") | Business name (if different than legal name) | |
|---|---|---|
| Provider number (NPI or Denti-Cal provider number as applicable) | | Business Telephone Number ( ) |
| Business address (number, street) | City | State | Nine-digit ZIP code |
| Mailing address (number, street, P.O. Box number) | City | State | Nine-digit ZIP code |
| Pay-to address (number, street, P.O. Box number) | City | State | Nine-digit ZIP code |
| Previous business address (number, street, P.O. Box number) | City | State | Nine-digit ZIP code |

Taxpayer Identification Number**

**EXECUTION OF THIS PROVIDER AGREEMENT BETWEEN AN APPLICANT OR PROVIDER HEREINAFTER JOINTLY REFERRED TO AS "PROVIDER") AND THE DEPARTMENT OF HEALTH CARE SERVICES (HEREINAFTER "DHCS"), IS MANDATORY FOR PARTICIPATION OR CONTINUED PARTICIPATION AS A PROVIDER IN THE MEDI-CAL PROGRAM PURSUANT TO 42 UNITED STATES CODE, SECTION 1396a(a)(27), TITLE 42, CODE OF FEDERAL REGULATIONS, SECTION 431.107, WELFARE AND INSTITUTIONS CODE, SECTION 14043.2, AND TITLE 22, CALIFORNIA CODE OF REGULATIONS, SECTION 51000.30(a)(2).**

**AS A CONDITION FOR PARTICIPATION OR CONTINUED PARTICIPATION AS A PROVIDER IN THE MEDI-CAL PROGRAM, PROVIDER AGREES TO COMPLY WITH ALL OF THE FOLLOWING TERMS AND CONDITIONS, AND WITH ALL OF THE TERMS AND CONDITIONS INCLUDED ON ANY ATTACHMENT(S) HERETO, WHICH IS/ARE INCORPORATED HEREIN BY REFERENCE:**

1. **Term and Termination.** This Agreement will be effective from the date applicant is enrolled as a provider by DHCS, or, from the date provider is approved for continued enrollment. Provider may terminate this Agreement by providing DHCS with written notice of intent to terminate, which termination shall result in Provider's immediate disenrollment and exclusion (without formal hearing under the Administrative Procedures Act) from further participation in the Medi-Cal program unless and until such time as Provider is re-enrolled by DHCS in the Medi-Cal program. DHCS may immediately terminate this Agreement for cause if Provider is suspended/excluded for any of the reasons set forth in Paragraph 26(a) below, which termination will result in Provider's immediate disenrollment and exclusion (without formal hearing under the Administrative Procedures Act) from further participation in the Medi-Cal program. During any period in which the provider is on provisional provider status or preferred provisional provider status, DHCS may terminate this agreement for any of the grounds stated in Welfare and Institutions Code Section 14043.27(c).

2. **Compliance With Laws and Regulations.** Provider agrees to comply with all applicable provisions of Chapters 7 and 8 of the Welfare and Institutions Code (commencing with Sections 14000 and 14200), and any applicable rules or regulations promulgated by DHCS pursuant to these Chapters. Provider further agrees that if it violates any of the provisions of Chapters 7 and 8 of the Welfare and Institutions Code, or any other regulations promulgated by DHCS pursuant to these Chapters, it may be subject to all sanctions or other remedies available to DHCS. Provider further agrees to comply with all federal laws and regulations governing and regulating Medicaid providers.

---

* Every applicant and provider must execute this Provider Agreement, except physicians, who must execute the "Medi-Cal Physician Application/Agreement," DHCS 6210.
** The taxpayer identification number may be a Taxpayer Identification Number (TIN) or a social security number for sole proprietors.

DHCS 6208 (rev. 2/08)

**EXHIBIT**
**A-1**

3. **National Provider Identifier (NPI).** Provider agrees not to submit any claims to DHCS using an NPI unless that NPI is appropriately registered with the Centers for Medicare and Medicaid Services (CMS) and is in compliance with all NPI requirements established by CMS as of the date the claim is submitted. Provider agrees that submission of an NPI to DHCS as part of an application to use that NPI to obtain payment constitutes an implied representation that the NPI submitted is appropriately registered and in compliance with all CMS requirements at the time of submission. Provider also agrees that any subsequent defect in registration or compliance of the NPI constitutes an "addition or change in the information previously submitted" which must be reported to DHCS under the requirements of California Code of Regulations, title 22, section 51000.40.

4. **Forbidden Conduct.** Provider agrees that it shall not engage in conduct inimical to the public health, morals, welfare and safety of any Medi-Cal beneficiary, or the fiscal integrity of the Medi-Cal program.

5. **Nondiscrimination.** Provider agrees that it shall not exclude or deny aid, care, service or other benefits available under Medi-Cal or in any other way discriminate against a person because of that person's race, color, ancestry, marital status, national origin, gender, age, economic status, physical or mental disability, political or religious affiliation or beliefs in accordance with California and federal laws. Provider further agrees that it shall provide aid, care, service, or other benefits available under Medi-Cal to Medi-Cal beneficiaries in the same manner, by the same methods, and at the same scope, level, and quality as provided to the general public.

6. **Scope of Health and Medical Care.** Provider agrees that the health care services it provides may include diagnostic, preventive, corrective, and curative services, goods, supplies, and merchandise essential thereto, provided by qualified personnel for conditions that cause suffering, endanger life, result in illness or infirmity, interfere with capacity for normal activity, including employment, or for conditions which may develop into some significant handicap or disability. Provider further agrees such health care services may be subject to prior authorization to determine medical necessity.

7. **Licensing.** Provider agrees to possess at the time this Agreement becomes effective, and to maintain in good standing throughout the term of this Agreement, valid and unexpired license(s), certificate(s), or other approval(s) to provide health care services, which is appropriate to the services, goods, supplies, and merchandise being provided, if required by the state or locality in which Provider is located, or by the Federal Government. Provider further agrees that DHCS shall automatically suspend Provider as a provider in the Medi-Cal program pursuant to Welfare and Institutions Code, Section 14043.6, if Provider has license(s), certificate(s), or other approval(s) to provide health care services, which are revoked or suspended by a federal, California, or another state's licensing, certification, or approval authority, has otherwise lost that/those license(s), certificate(s), or approval(s), or has surrendered that/those license(s), certificate(s), or approval(s) while a disciplinary hearing on that/those license(s), certificate(s), or approval(s) was pending. Such suspension shall be effective on the date that Provider's license, certificate, or approval was revoked, suspended, lost, or surrendered. Provider further agrees to notify DHCS within ten business days of learning that any restriction has been placed on, or of a suspension of Provider's license, certificate, or other approval to provide health care. Provider further agrees to provide DHCS complete information related to any restriction to, or revocation or loss of, Provider's license, certificate, or other approval to provide health care services.

8. **Insurance.** Provider agrees to possess at the time this Agreement becomes effective, and to maintain in good standing throughout the term of this Agreement, liability insurance for the business address and, if a licensed practitioner, professional liability (malpractice) insurance coverage from an authorized insurer pursuant to Section 700 of the Insurance Code.

9. **Record Keeping and Retention.** Provider agrees to make, keep and maintain in a systematic and orderly manner, and have readily retrievable, such records as are necessary to fully disclose the type and extent of all services, goods, supplies, and merchandise provided to Medi-Cal beneficiaries, including, but not limited to, the records described in Section 51476 of Title 22, California Code of Regulations, and the records described in Section 431.107 of Title 42 of the Code of Federal Regulations. Provider further agrees that such records shall be made at or near the time at which the services, goods, supplies, and merchandise are delivered or rendered, and that such records shall be retained by Provider in the form in which they are regularly kept for a period of three years from the date the goods, supplies, or merchandise were delivered or the services rendered.

10. **DHCS, AG and Secretary Access to Records; Copies of Records.** Provider agrees to make available, during regular business hours, all pertinent financial records, all records of the requisite insurance coverage, and all records concerning the provision of health care services to Medi-Cal beneficiaries to any duly authorized representative of DHCS, the California Attorney General's Medi-Cal Fraud Unit ("AG"), and the Secretary of the United States Centers for Medicare and Medicaid Services (Secretary). Provider further agrees to provide, if requested by any of the above, copies of the records and documentation, and that failure to comply with any request to examine or receive copies of

such records shall be grounds for immediate suspension of Provider from participation in the Medi-Cal program. Provider will be reimbursed for reasonable copy costs as determined by DHCS, AG or Secretary.

11. **Confidentiality of Beneficiary Information.** Provider agrees that all medical records of beneficiaries made or acquired by Provider shall be confidential and shall not be released without the written consent of the beneficiary or his/her personal representative, or as otherwise authorized by law.

12. **Disclosure of Information to DHCS.** Provider agrees to disclose all information as required in Federal Medicaid laws and regulations and any other information required by DHCS, and to respond to all requests from DHCS for information. Provider further agrees that the failure of Provider to disclose the required information, or the disclosure of false information shall, prior to any hearing, result in the denial of the application for enrollment or shall be grounds for termination of enrollment status or suspension from the Medi-Cal program, which shall include deactivation of all provider numbers used by Provider to obtain reimbursement from the Medi-Cal program. Provider further agrees that all bills or claims for payment to DHCS by Provider shall not be due and owing to Provider for any period(s) for which information was not reported or was reported falsely to DHCS. Provider further agrees to reimburse those Medi-Cal funds received during any period for which information was not reported, or reported falsely, to DHCS.

13. **Background Check.** Provider agrees that DHCS may conduct a background check on Provider for the purpose of verifying the accuracy of the information provided in the application and in order to prevent fraud or abuse. The background check may include, but not be limited to, the following: (1) on-site inspection prior to enrollment; (2) review of medical and business records; and, (3) data searches.

14. **Unannounced Visits By DHCS, AG and Secretary.** Provider agrees that DHCS, AG and/or Secretary may make unannounced visits to Provider, at any of Provider's business locations, before, during or after enrollment, for the purpose of determining whether enrollment, continued enrollment, or certification is warranted, to investigate and prosecute fraud against the Medi-Cal program, to investigate complaints of abuse and neglect of patients in health care facilities receiving payment under the Medi-Cal program, and/or as necessary for the administration of the Medi-Cal program and/or the fulfillment of the AG's powers and duties under Government Code Section 12528. Premises subject to inspection include billing agents, as defined in Welfare and Institutions Code Section 14040.1. Failure to permit inspection by DHCS, AG or Secretary or any agent, investigator or auditor thereof, shall be grounds for immediate suspension of provider from participation in the Medi-Cal program.

15. **Provider Fraud and Abuse.** Provider agrees that it shall not engage in or commit fraud or abuse. "Fraud" means an intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or herself or some other person. It includes any act that constitutes fraud under applicable federal or state law. "Abuse" means either: (1) practices that are inconsistent with sound fiscal or business practices and result in unnecessary cost to the Medicare program, the Medi-Cal program, another state's Medicaid program, or other health care programs operated, or financed in whole or in part, by the Federal Government or any state or local agency in this state or any other state; (2) practices that are inconsistent with sound medical practices and result in reimbursement by the Medi-Cal program or other health care programs operated, or financed in whole or in part, by the Federal Government or any state or local agency in this state or any other state, for services that are unnecessary or for substandard items or services that fail to meet professionally recognized standards for health care.

16. **Investigations of Provider for Fraud or Abuse.** Provider certifies that, at the time this Agreement was signed, it was not under investigation for fraud or abuse pursuant to Subpart A (commencing with Section 455.12) of Part 455 of Title 42 of the Code of Federal Regulations or under investigation for fraud or abuse by any other government entity. Provider further agrees to notify DHCS within ten business days of learning that it is under investigation for fraud or abuse. Provider further agrees that it shall be subject to temporary suspension pursuant to Welfare and Institutions Code, Section 14043.36(a), which shall include temporary deactivation of all provider numbers used by Provider to obtain reimbursement from the Medi-Cal program, if it is discovered by DHCS that Provider is under investigation for fraud or abuse. Provider further agrees to cooperate with and assist DHCS and any state or federal agency charged with the duty of identifying, investigating, sanctioning, or prosecuting suspected fraud and abuse.

17. **Provider Fraud or Abuse Convictions and/or Civil Fraud or Abuse Liability.** Provider certifies that it and its owners, officers, directors, employees, and agents, has not: (1) been convicted of any felony or misdemeanor involving fraud or abuse in any government program, within the last ten years; or (2) been convicted of any felony or misdemeanor involving the abuse of any patient; or (3) been convicted of any felony or misdemeanor substantially related to the qualifications, functions, or duties of a provider; or (4) entered into a settlement in lieu of conviction for fraud or abuse, within the last ten years; or, (5) been found liable for fraud or abuse in any civil proceeding, within the last ten years. Provider further agrees that DHCS shall not enroll Provider if within the last ten years, Provider has

been convicted of any felony or any misdemeanor involving fraud or abuse in any government program, has entered into a settlement in lieu of conviction for fraud or abuse, or has been found liable for fraud or abuse in any civil proceeding.

18. **Changes to Provider Information.** Provider agrees to keep its application for enrollment in the Medi-Cal program current by informing DHCS, Provider Enrollment Division, in writing on a form or forms to be specified by DHCS, within 35 days of any changes to the information contained in its application for enrollment, its disclosure statement, this Agreement, and/or any attachments to these documents.

19. **Prohibition of Rebate, Refund, or Discount.** Provider agrees that it shall not offer, give, furnish, or deliver any rebate, refund, commission preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it shall not solicit, request, accept, or receive, any rebate, refund, commission preference, patronage dividend, discount, or any other gratuitous consideration, in connection with the rendering of health care services to any Medi-Cal beneficiary. Provider further agrees that it will not take any other action or receive any other benefit prohibited by state or federal law.

20. **Payment From Other Health Coverage Prerequisite to Claim Submission.** Provider agrees that it shall first seek to obtain payment for services provided to Medi-Cal beneficiaries from any private or public health insurance coverage to which the beneficiary is entitled, where Provider is aware of this coverage and to the extent the coverage extends to these services, prior to submitting a claim to DHCS for the payment of any unpaid balance for these services. In the event that a claim submitted to a private or public health insurer has not been paid within 90 days of billing by Provider, Provider may submit a claim to DHCS.

21. **Beneficiary Billing.** Provider agrees that it shall not submit claims to or demand or otherwise collect reimbursement from a Medi-Cal beneficiary, or from other persons on behalf of the beneficiary, for any service included in the Medi-Cal program's scope of benefits in addition to a claim submitted to the Medi-Cal program for that service, except to: (1) collect payments due under a contractual or legal entitlement pursuant to Welfare and Institutions Code, Section 14000(b); (2) bill a long-term care patient for the amount of his/her liability; and, (3) collect a co-payment pursuant to Welfare and Institutions Code, Sections 14134 and 14134.1. Provider further agrees that, in the event that a beneficiary willfully refuses to provide current other health care coverage billing information as described in Section 50763(a)(5) of Title 22, California Code of Regulations, Provider may, upon giving the beneficiary written notice of intent, bill the beneficiary as a private pay patient.

22. **Payment From Medi-Cal Program Shall Constitute Full Payment.** Provider agrees that payment received from DHCS in accordance with Medi-Cal fee structures shall constitute payment in full, except that Provider, after making a full refund to DHCS of any Medi-Cal payments received for services, goods, supplies, or merchandise, may recover all of Provider's fees to the extent that any other contractual entitlement, including, but not limited to, a private group or indemnification insurance program, is obligated to pay the charges for the services, goods, supplies, or merchandise provided to the beneficiary.

23. **Return of Payment for Services Otherwise Covered by the Medi-Cal Program.** Provider agrees that any beneficiary who has paid Provider for health care services, goods, supplies, or merchandise otherwise covered by the Medi-Cal program received by the beneficiary shall be entitled to a prompt return from Provider of any part of the payment which meets any of the following: (1) was rendered during any period prior to the receipt of the beneficiary's Medi-Cal card, for which the card authorizes payment under Welfare and Institutions Code, Sections 14018 or 14019; (2) was reimbursed to Provider by the Medi-Cal program, following audits and appeals to which Provider is entitled; (3) is not payable by a third party under contractual or other legal entitlement; (4) was not used by the beneficiary to satisfy his/her paid or obligated liability for health care services, goods, supplies, or merchandise, or to establish eligibility.

24. **Compliance With Billing and Claims Requirements.** Provider agrees that it shall comply with all of the billing and claims requirements set forth in the Welfare and Institutions Code and its implementing regulations, and the provider manual.

25. **Deficit Reduction Act of 2005, Section 6032 Implementation.** As a condition of payment for services, goods, supplies and merchandise provided to beneficiaries in the Medical Assistance Program ("Medi-Cal"), providers must comply with the False Claims Act employee training and policy requirements in 1902(a) of the Social Security Act (42 USC 1396a(a)(68)), set forth in that subsection and as the federal Secretary of Health and Human Services may specify.

26. **Termination of Provisional Provider or Preferred Provisional Provider Status.** Provider agrees that, while it is on provisional provider status or preferred provisional provider status, the provider will be subject to immediate termination

of its provisional provider status or preferred provisional provider status and disenrollment from the Medi-Cal program in the following circumstances:

(1) The provider, persons with an ownership or control interest in the provider, or persons who are directors, officers, or managing employees of the provider have been convicted of any felony, or convicted of any misdemeanor involving fraud or abuse in any government program, related to neglect or abuse of a patient in connection with the delivery of a health care item or service, or in connection with the interference with, or obstruction of, any investigation into health care related fraud or abuse, or have been found liable for fraud or abuse in any civil proceeding, or have entered into a settlement in lieu of conviction for fraud or abuse in any government program within 10 years of the date of the application package.

(2) There is a material discrepancy in the information provided to the department, or with the requirements to be enrolled, that is discovered after provisional provider status or preferred provisional provider status has been granted and that cannot be corrected because the discrepancy occurred in the past.

(3) The provider has provided material information that was false or misleading at the time it was provided.

(4) the provider failed to have an established place of business at the business address for which the application package was submitted at the time of any onsite inspection, announced or unannounced visit, or any additional inspection or review conducted pursuant to this article or a statute or regulation governing the Medi-Cal program, unless the practice of the provider's profession or delivery of services, goods, supplies, or merchandise is such that services, goods supplies, or merchandise are rendered or delivered at locations other than the business address and this practice of delivery of services, goods, supplies, or merchandise has been disclosed in the application package approved by the department when the provisional provider status of preferred provisional provider status was granted.

(5) The provider meets the definition of a clinic under Section 1200 of the Health and Safety Code, but is not licensed as a clinic pursuant to Chapter 1 (commencing with Section 1200) of Division 2 of the Health and Safety Code and fails to meet the requirements to qualify for at least one exemption pursuant to Section 1206 or 1206.1 of the Health and Safety Code.

(6) The provider performs clinical laboratory tests or examinations, but it or its personnel do not meet CLIA, and the regulations adopted thereunder, and the state clinical laboratory law, do not possess valid CLIA certificates and clinical laboratory registrations or licenses pursuant to Chapter 3 (commencing with Section 1200) of Division 2 of the Business and Professions Code, or are not exempt from licensure as a clinical laboratory under Section 1241 of the Business and Professions Code.

(7) The provider fails to possess either of the following:

(a) The appropriate licenses, permits, certificates, or other approvals needed to practice the profession or occupation, or provide the services, goods, supplies, or merchandise the provider identified in the application package approved by the department when the provisional provider status or preferred provisional provider status was granted and for the location for which the application was submitted.

(b) The business or zoning permits or other approval necessary to operate a business at the location identified in its application package approved by the department when the provisional provider status or preferred provisional provider status was granted.

(8) The provider, or if the provider is a clinic, group, partnership, corporation, or other association, any officer, director, or shareholder with a 10 percent or greater interest in that organization, commits two or more violations of the federal or state statues or regulation governing the Medi-Cal program, and the violations demonstrate a pattern or practice of fraud, abuse, or provision of unnecessary or substandard medical services.

(9) The provider commits any violation of a federal or state statute or regulation governing the Medi-Cal program or of a statute or regulation governing the provider's profession or occupation and the violation represents a threat of immediate jeopardy or significant harm to any Medi-Cal beneficiary or to the public welfare.

(10) The provider submits claims for payment that subject a provider to suspension under Section 14043.61.

(11) The provider submits claims for payment for services, goods, supplies, or merchandise rendered at a location other than the location for which the provider number was issued, unless the practice of the provider's profession

or delivery of services, goods, supplies, or merchandise is such that services, goods, supplies, or merchandise are rendered or delivered at locations other than the business address and this practice or delivery of services, goods, supplies, or merchandise has been disclosed in the application package approved by the department when the provisional provider status was granted.

(12) The provider has not paid its fine, or has a debt due and owing, including overpayments and penalty assessments, to any federal, state, or local government entity that relates to Medicare, Medicaid, Medi-Cal, or any other federal or state health care program, and has not made satisfactory arrangements to fulfill the obligation or otherwise been excused by legal process from fulfilling the obligation.

27. **Provider Suspension; Appeal Rights; Reinstatement.** Provider agrees that it is to be subject to the following suspension actions. Provider further agrees that the suspension by DHCS of Provider shall include deactivation of all of Provider's provider numbers and shall preclude Provider from submitting claims for payment, either personally or through claims submitted by any individual, clinic, group, corporation, or other association to the Medi-Cal program for any services, supplies, goods, or merchandise that provider has provided directly or indirectly to a Medi-Cal beneficiary, except for services, supplies, goods, or merchandise provided prior to the suspension.

   a. **Automatic Suspensions/Mandatory Exclusions.** DHCS shall automatically suspend Provider under the following circumstances:

      (1) Upon notice from the Secretary of the United States Department of Health and Human Services that Provider has been excluded from participation in the Medicare or Medicaid programs. No administrative appeal of a suspension on this ground shall be available to Provider. (Welfare and Institutions Code, Section 14123(b),(c).)

      (2) If Provider has license(s), certificate(s), or other approval(s) to provide health care services, revoked or suspended by a federal, California, or another state's licensing, certification, or approval authority, has otherwise lost that/those license(s), certificate(s), or approval(s), or has surrendered that/those license(s), certificate(s), or approval(s) while a disciplinary hearing on that license, certificate, or approval was pending. (Welfare and Institutions Code, Section 14043.6.)

      (3) If Provider is convicted of any felony or any misdemeanor involving fraud, abuse of the Medi-Cal program or any patient, or otherwise substantially related to the qualifications, functions, or duties of a provider of service. Suspension following conviction is not subject to the proceedings under Welfare and Institutions Code, Section 14123(c). However, the director may grant an informal hearing at the request of the provider to determine in the director's sole discretion if the circumstances surrounding the conviction justify rescinding or otherwise modifying the suspension.

   b. **Permissive Suspensions/Permissive Exclusions.** DHCS may suspend Provider under the following circumstances:

      (1) Provider violates any of the provisions of Chapter 7 of the Welfare and Institutions Code (commencing with Section 14000 except for Sections 14043–14044), or Chapter 8 (commencing with Section 14200) or any rule or regulations promulgated by DHCS pursuant to those provisions. Administrative appeal pursuant to Health and Safety Code, Section 100171. (Welfare and Institutions Code, Section 14123(a),(c).)

      (2) Provider fails to comply with DHCS' request to examine or receive copies of the books and records pertaining to services rendered to Medi-Cal beneficiaries. Administrative appeal pursuant to Health and Safety Code, Section 100171. (Welfare and Institutions Code, Section 14124.2.)

      (3) Provider participating in the Medi-Cal dental program provides services, goods, supplies, or merchandise that are below or less than the standard of acceptable quality, as established by the California Dental Association Guidelines for the Assessment of Clinical Quality and Professional Performance, Copyright 1995, Third Edition, as periodically amended. (Welfare and Institutions Code, Section 14123(f).)

   c. **Temporary Suspension.** DHCS shall temporarily suspend Provider under the following circumstances:

      (1) Provider fails to disclose all information as required in federal Medicaid regulations or any other information required by DHCS, or discloses false information. Administrative appeal pursuant to Welfare and Institutions Code, Section 14043.65. (Welfare and Institutions Code, Section 14043.2(a).)

      (2) If it is discovered that Provider is under investigation for fraud or abuse. Administrative appeal pursuant to

Welfare and Institutions Code, Section 14043.65. (Welfare and Institutions Code, Section 14043.36(a).)

(3) Provider fails to remediate discrepancies discovered as a result of an unannounced visit to Provider. Administrative appeal pursuant to Welfare and Institutions Code, Section 14043.65. (Welfare and Institutions Code, Section 14043.7(c).)

(4) When necessary to protect the public welfare or the interests of the Medi-Cal program. Administrative appeal pursuant to Health and Safety Code, Section 100171. (Welfare and Institutions Code, Section14123(c).)

(5) Provider submits claims for payment under any provider number from an individual or entity that is suspended, excluded or otherwise ineligible. This includes a provider on the Suspended and Ineligible Provider List or any list published by the Office of the Inspector General or the Department of Health and Human Services. Appeal pursuant to Welfare and Institutions Code, Section 14043.65. (Welfare and Institutions Code, Section 14043.61)

28. **Liability of Group Providers.** Provider agrees that, if it is a provider group, the group, and each member of the group, are jointly and severally liable for any breach of this Agreement, and that action by DHCS against any of the providers in the provider group may result in action against all of the members of the provider group.

29. **Legislative and Congressional Changes.** Provider agrees that this Agreement is subject to any future additional requirements, restrictions, limitations, or conditions enacted by the California Legislature or the United States Congress which may affect the provisions, terms, conditions, or funding of this Agreement in any manner.

30. **Provider Capacity.** Provider agrees that Provider, and the officers, directors, employees, and agents of Provider, in the performance of this Agreement, shall act in an independent capacity and not as officers or employees or agents of the State of California.

31. **Indemnification.** Provider agrees to indemnify, defend, and save harmless the State of California, its officers, agents, and employees, from any and all claims and losses accruing or resulting to any and all persons, firms, or corporations furnishing or supplying services, materials, or supplies in connection with Provider's performance of this Agreement, and from any and all claims and losses accruing or resulting to any Medi-Cal beneficiary, or to any other person, firm, or corporation who may be injured or damaged by Provider in the performance of this Agreement.

32. **Governing Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

33. **Venue.** Venue for all actions, including federal actions, concerning this Agreement, lies in Sacramento County, California, or in any other county in which the California Department of Justice maintains an office.

34. **Titles.** The titles of the provisions of this Agreement are for convenience and reference only and are not to be considered in interpreting this Agreement.

35. **Severability.** If one or more of the provisions of this Agreement shall be invalid, illegal, void, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired. Either party having knowledge of such a provision shall promptly inform the other of the presumed nonapplicability of such provision. Should the nonapplicable provision go to the heart of this Agreement, the Agreement shall be terminated in a manner commensurate with the interests of both parties.

36. **Assignability.** Provider agrees that it has no property right in or to its status as a Provider in the Medi-Cal program or in or to the provider number(s) assigned to it, and that Provider may not assign its provider number for use as a Medi-Cal provider, or any rights and obligations it has under this Agreement except to the extent purchasing owner is joining this provider agreement with successor liability with joint and several liability.

37. **Waiver.** Any action or inaction by DHCS or any failure of DHCS on any occasion, to enforce any right or provision of this Agreement, shall not be interpreted to be a waiver by DHCS of its rights hereunder and shall not prevent DHCS from enforcing such provision or right on any future occasion. The rights and remedies of DHCS herein are cumulative and are in addition to any other rights or remedies that DHCS may have at law or in equity.

38. **Complete Integration.** This Agreement, including any attachments or documents incorporated herein by express reference, is intended to be a complete integration and there are no prior or contemporaneous different or additional agreements pertaining to the subject matter of this Agreement.

39. **Amendment.** No alteration or variation of the terms or provisions of this Agreement shall be valid unless made in writing and signed by the parties to this Agreement, and no oral understanding or agreement not set forth in this Agreement, shall be binding on the parties to this Agreement.

40. **Provider Attestation.** Provider agrees that all information it submits on the application form for enrollment, this Agreement, and all attachments or changes to either, is true, accurate, and complete to the best of Provider's knowledge and belief. Provider further agrees to sign the application form for enrollment, this Agreement, and all attachments or changes to either, under penalty of perjury under the laws of the State of California.

**Provider agrees that compliance with the provisions of this agreement is a condition precedent to payment to provider.**

**The parties agree that this agreement is a legal and binding document and is fully enforceable in a court of competent jurisdiction. The provider signing this agreement warrants that he/she has read this agreement and understands it.**

**I declare under penalty of perjury under the laws of the State of California that the foregoing information is true, accurate, and complete to the best of my knowledge and belief.**

**I declare I am the provider or I have the authority to legally bind the provider, which is an entity and not an individual person and that I am eligible to sign this agreement under Title 22, CCR Section 51000.30(a)(2)(B).**

1. Printed legal name of provider

2. Printed name of person signing this declaration on behalf of provider (if an entity or business name is listed in Item 1 above)

3. Original signature of provider or representative if this provider is an entity other than an individual person as sole proprietor

4. Title of person signing this declaration

5. Executed at: _____, _____ on ___ / ___ / ___
   (City)                          (State)            (Date)

6. Notary Public:

   Applicants and providers licensed pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, the Osteopathic Initiative Act, or the Chiropractic Initiative Act ARE NOT REQUIRED to have this form notarized. If notarization is required, the Certificate of Acknowledgement signed by the Notary Public must be in the form specified in Section 1189 of the Civil Code.

**Privacy Statement**
**(Civil Code Section 1798 et seq.)**

All information requested on the application, the disclosure statement, and the provider agreement is mandatory with the exception of the social security number for any person other than the person or entity for whom an IRS Form 1099 must be provided by the Department pursuant to 26 USC 6041. This information is required by the Department of Health Care Services, Provider Enrollment Division, by the authority of Welfare and Institutions Code Section 14043.2(a). The consequences of not supplying the mandatory information requested are denial of enrollment as a Medi-Cal provider or denial of continued enrollment as a provider and deactivation of all provider numbers used by the provider to obtain reimbursement from the Medi-Cal program. The consequence of not supplying the voluntary social security number information requested is delay in the application process while other documentation is used to verify the information supplied. Any information provided will be used to verify eligibility to participate as a provider in the Medi-Cal program. Any information may also be provided to the State Controller's Office, the California Department of Justice, the Department of Consumer Affairs, the Department of Corporations, or other state or local agencies as appropriate, fiscal intermediaries, managed care plans, the Federal Bureau of Investigation, the Internal Revenue Service, Medicare Fiscal Intermediaries, Centers for Medicare and Medicaid Services, Office of the Inspector General, Medicaid, and licensing programs in other states. For more information or access to records containing your personal information maintained by this agency, contact the Provider Enrollment Division at (916) 323-1945 or Denti-Cal at (800) 423-0507.

# INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION
## OFFICE OF MEDICAID POLICY AND PLANNING

## MEDICAID PROVIDER AGREEMENT

By execution of this Agreement, the undersigned entity ("Provider") requests enrollment as a provider of Medicaid-covered services and/or supplies to Indiana Medicaid recipients, and as a condition of enrollment, Provider agrees:

1. To continually comply with all enrollment requirements established under rules adopted by the State of Indiana Family and Social Services Administration ("IFSSA").

2. To abide by and comply with all federal and state statutes and regulations pertaining to the Medicaid Program, as they may be amended from time to time.

3. To continually meet the state and federal licensure, certification or other regulatory requirements for Provider's specialty including all provisions of the State of Indiana Medical Assistance law or any rule or regulation promulgated pursuant thereto.

4. To immediately notify IFSSA or its agent of any change in the status of Provider's license, certification, or permit to provide its services to the public in the State of Indiana.

5. To provide Medicaid-covered services and/or supplies for which federal financial participation is available for Medicaid recipients pursuant to all applicable federal and state statutes and regulations.

6. To safeguard information about Medicaid recipients including at least:
   a. recipients' name, address and social and economic circumstances;
   b. medical services provided to recipients;
   c. recipients' medical data, including diagnosis and past history of disease or disability;
   d. any information received for verifying recipients' income eligibility and amount of medical assistance payments; and
   e. any information received in connection with the identification of legally liable third party resources.

   Information about Medicaid recipients should be released only to the IFSSA or its agent and only when in connection with:
   a. providing services for recipients; and
   b. conducting or assisting an investigation, prosecution, or civil or criminal proceeding related to the provision of Medicaid-covered services.

7. To maintain a written contract with all subcontractors which fulfills the requirements that are appropriate to the service or activity delegated under the subcontract. No subcontract, however, terminates the legal responsibility of the contractor to the agency to assure that all activities under the contract are carried out.

8. To submit claims for services rendered by the provider or employees of the provider and not to submit claims for services rendered by contractors unless the provider is a healthcare facility (e.g. hospital, ICF-MR, nursing home), or a government agency with a contract that meets the requirements described in paragraph 7 of this Agreement. Healthcare facilities and government agencies may, under circumstances permitted in federal law, subcontract with other entities or individuals to provide Medicaid covered services rendered pursuant to this Agreement.



EXHIBIT
A-2

9. To abide by the Medicaid Program Provider Manual as amended from time to time as well as all provider bulletins and notices that shall be communicated to the Provider and shall be binding upon receipt. Any amendments to the Provider Manual shall be communicated to Provider and shall be binding upon Provider upon receipt. Receipt of amendments, bulletins and notices by Provider shall be presumed when the amendments, bulletins, and notices are mailed to Provider's current address on file with IFSSA or its fiscal agent.

10. To submit timely billing on Medicaid approved forms, as outlined in the Medicaid Program Provider Manual, in an amount no greater than Provider's usual and customary charge to the general public for the same service.

11. To submit claim(s) for Medicaid reimbursement only after first ascertaining whether any other resource(s) may be liable for any or all of the cost of the services rendered and seeking reimbursement from such resources.

12. To submit claim(s) for Medicaid reimbursement utilizing the appropriate claim forms and codes as specified in the provider manual, bulletins and notices.

13. To submit only claims that can be documented by Provider as being:
    a. for only medically necessary medical assistance services;
    b. for medical assistance services actually provided to only the person in whose name the claim is being made; and
    c. only for compensation that Provider is legally entitled to receive.

14. To accept payment as determined by IFSSA or its fiscal agent in accordance with federal and state statutes and regulations as payment in full for all Medicaid-covered services provided to Medicaid recipients, and not to bill recipients or any member of a recipient's family for any additional charge for Medicaid-covered services, excluding any co-payment permitted by law.

15. To promptly refund to IFSSA or its fiscal agent any duplicate or erroneous payment received.

16. To make repayments to IFSSA or its fiscal agent, or arrange to have future payments from the Medicaid program withheld, within 60 days or receipt from IFSSA or its fiscal agent that an investigation or audit has determined that an overpayment to Provider has been made, unless an appeal of the determination is pending. A hospital licensed under IC16-21 has 180 days to repay.

17. To make full reimbursement to IFSSA or its fiscal agent of any federal disallowance incurred by IFSSA when such disallowance relates to payments previously made to Provider under the Medicaid Program.

18. To fully cooperate with federal and state officials and their agents as they conduct periodic inspections, reviews and audits.

19. To make available upon demand by federal and state officials and their agents all records and information necessary to assure the appropriateness of Medicaid payments made to Provider, to assure the proper administration of the Medicaid Program, and to assure Provider's compliance with all applicable statutes and regulations. Such records and information are specified in 405 IAC 1-5 and in the "Documentation and Record Maintenance" section of the Provider Manual and shall include, without being limited to, the following:

    a. medical records as specified by Section 1902(a)(31) of Title XIX of the Social Security Act, and any amendments thereto;

b. records of all treatments, drugs and services for which vendor payments have been made, or are to be made under the Title XIX Program, including the authority for and the date of administration of such treatment, drugs or services.

c. any records determined by IFSSA or its representative to be necessary to fully disclose and document the extent of services provided to individuals receiving assistance under the provisions of the Indiana Medicaid program;

d. documentation in each patient's record that will enable the IFSSA or its agent to verify that each charge is due and proper.

e. financial records maintained in the standard, specified form;

f. all other records as may be found necessary by the IFSSA or its agent in determining compliance with any Federal or State law, rule, or regulation promulgated by the United States Department of Health and Human Services or by the IFSSA.

20. To cease any conduct that IFSSA or its representative deems to be abusive of the Medicaid program.

21. To promptly correct deficiencies in Provider's operations upon request by IFSSA or its fiscal agent.

22. To file all appeal within the time limits listed below. Appeal requests must state facts demonstrating that:
   a) the petitioner is a person to whom the order is specifically directed;
   b) the petitioner is aggrieved or adversely affected by the order;
   c) the petitioner is entitled to review under the law.

Provider must file a statement of issues within the time limits listed below, setting out in detail:
   a) the specific findings, actions, or determinations of IFSSA from which Provider is appealing;
   b) with respect to each finding, action or determination, all statutes or rules supporting Provider's contentions of error.

Time limits for filing an appeal and the statement of issues are as follows:
   a) a hospital licensed under IC16-21 must file an appeal of any of the following actions within 180 days of receipt of IFSSA's determination:
      (1) A notice of program reimbursement or equivalent determination regarding reimbursement or a year end cost settlement.
      (2) A notice of overpayment.
      The statement if issues must be filed with the request for appeal.
   b) Other providers must file an appeal of determination that an overpayment has occurred within 60 days of receipt of IFSSA's determination. The statement of issues must be filed within 60 days of receipt of IFSSA's determination.
   c) All appeals of actions not described in (a) or (b) must be filed within 15 days of receipt of IFSSA's determination. The statement of issues must be filed within 45 days of receipt of IFSSA's determination.

23. To cooperate with IFSSA or its agent in the application of utilization controls as provided in federal an state statutes and regulations as they may be amended from time to time.

24. To comply with civil rights requirements as mandated by federal and state statutes and regulation by ensuring that no person shall, on the basis of race, color, national origin, ancestry, disability, age, sex or religion, be excluded from participation in, be denied the benefits of, or be otherwise subject to discrimination in the provision of a Medicaid-covered service.

25. To immediately notify IFSSA or its fiscal agent of any change in address or in the status of ownership or control of the undersigned entity.

26. The provider must immediately notify IFSSA or its fiscal agent of any corporate reorganization which effectively causes the original provider name to cease to exist. With this type of reorganization, either a letter signed by an authorized representative of the newly named entity, as a result of the reorganization, will assume the original Medicaid agreement; or completion of a new provider agreement, will be required. In addition, any change in the federal tax identification number for the newly named entity will need to be immediately reported to IFSSA or its fiscal agent.

27. To furnish to IFSSA or its agent, as a prerequisite to the effectiveness of this Agreement, the information and documents set out in Schedules A through D to this Agreement, which is incorporated here by reference, and to update this information as necessary from time to time.

28. That subject to Article 26, this Agreement shall be effective as of the date set out in the Provider Notification letter.

29. That this Agreement may be terminated as follows:
    a. By IFSSA or its fiscal agent for Provider's breach of any provision of this Agreement as determined by IFSSA; or
    b. By IFSSA or its fiscal agent, or by Provider, upon 60 days written notice.

30. That this Agreement, upon execution, supersedes and replaces any provider agreement previously executed by the Provider.

THE UNDERSIGNED, BEING THE PROVIDER OF HAVING THE SPECIFIC AUTHORITY TO BIND THE PROVIDER TO THE TERMS OF THIS AGREEMENT, AND HAVING READ THIS AGREEMENT AND UNDERSTANDING IT IN ITS ENTIRETY, DOES HEREBY AGREE, BOTH INDIVIDUALLY AND ON BEHALF OF THE PROVIDER AS A BUSINESS ENTITY, TO ABIDE BY AND COMPLY WITH ALL THE STIPULATIONS, CONDITIONS, AND TERMS SET FORTH HEREIN.

THE UNDERSIGNED ACKNOWLEDGES THAT THE COMMISSION OF ANY MEDICAID RELATED OFFENSE AS SET OUT IN 42 USC 1320a-7b MAY BE PUNISHABLE BY A FINE OF UP TO $25,000 OR IMPRISONMENT OF UP TO FIVE YEARS OR BOTH.

_____
Provider Entity Name (doing business as)

_____
Name of Authorized Representative (typed)
(Must be an Authorized Officer, Owner or Partner)

_____
Signature

President/CEO
Title

_____
Date of Signature

199191292022

# COMMONWEALTH OF KENTUCKY
## KENTUCKY BOARD OF PHARMACY
1024 CAPITAL CENTER DR., STE. 210
Frankfort, Kentucky 40601-8204

LICENSE / PERMIT: **PHARMACY**              EFFECTIVE DATE:   **5/28/1999**

NUMBER: **P06420**                   EXPIRATION DATE:   **6/30/2000**

Issued to:

PIC: BERNARD GREGOROWICZ

UNITED PHARMACY ASSOCIATES
1900 U S HWY 41 N #4
HENDERSON KY 42420

ISSUED PURSUANT TO KRS CHAPTER 315          MUST BE CONSPICUOUSLY DISPLAYED

PROVIDER # - 54034053

EXHIBIT
A-3

** TOTAL PAG

199181292022

# COMMONWEALTH OF KENTUCKY
KENTUCKY BOARD OF PHARMACY
1024 CAPITAL CENTER DR., STE. 210
Frankfort. Kentucky 40601-8204

LICENSE / PERMIT:  **PHARMACY**

EFFECTIVE DATE:  **5/28/1999**

NUMBER:  **P06420**

EXPIRATION DATE:  **6/30/2000**

Issued to:

PIC:  BERNARD GREGOROWICZ

UNITED PHARMACY ASSOCIATES
1900 U S HWY 41 N #4
HENDERSON KY 42420

ISSUED PURSUANT TO KRS CHAPTER 315         · MUST BE CONSPICUOUSLY DISPLAYED

$PROVIDER \# - 54034053$



**CABINET FOR HEALTH SERVICES**
COMMONWEALTH OF KENTUCKY
FRANKFORT, 40621-0001

DEPARTMENT FOR MEDICAID SERVICES
"An Equal Opportunity Employer M/F/D"

December 14, 1998

Badger Acquisition of Kentucky LLC
DBA/United Pharmacy Associates
1900 Highway 41 North #4
Henderson, Kentucky 42420-2662

Dear Provider:

This letter confirms the processing of your application to participate as a **Pharmacy Provider** in the Kentucky Medicaid Program. The number assigned to you is **54034053**. This provider number is for your exclusive use. Please reference your provider number on all claims, correspondence or inquiries to the Kentucky Medicaid Program or to Unisys, the Program's fiscal agent.

Your effective enrollment date is **November 17, 1998**; you may bill for covered services provided on or after this date. If you have provided services to Medicaid recipients prior to this date, please contact the Provider Enrollment Section. You will continue to be eligible through **August 30, 1999**. If your eligibility through-date is any date other than December 31, 1999, it will be necessary for you to submit a copy of your license, permit or certification annually. If your license, permit or certification is issued on some schedule other than annually, please submit a copy of your license, permit or certification when it is reissued.

Please notify the Provider Enrollment Section in writing immediately if there is a change in your address, ownership, tax status or licensure status.

For information pertaining to Program policy or Provider Enrollment, please contact the Individual Provider Services Branch at 502-564-2687. Please indicate which program you are inquiring about. All questions relating to claims processing should be directed to Unisys. In-state inquiries may be directed to 800-205-4696. Out-of-state inquires may be directed to Unisys at 502-226-1140.

Sincerely,

*Sarah Maynard, R.N.*

Sarah Maynard, R.N.
Acting Branch Manager
Individual Provider Services

SM:sam

Enclosures



**EDUCATION PAYS**

MAP -343 (REV. 7/97)

# COMMONWEALTH OF KENTUCKY DEPARTMENT FOR MEDICAID SERVICES KENTUCKY HEALTH CARE PARTNERSHIP MANAGED BEHAVIORAL HEALTHCARE ORGANIZATION

## PROVIDER AGREEMENT

*5403405*

*or # 5402-8888*

DATE OF AGREEMENT _backdate 12 months_ Provider # _Applying for new #_

1. The Provider agrees to abide by the following terms and conditions relating to the Kentucky Medicaid Program:

_Badger Acquisition of Kentucky LLC dba: United Pharmacy Associates_
Provider

whose principal place of business is located at the following address:

_1900 Highway 41 N #4_
Street

_Henderson_  _Ky_  _42420-2662_
City        State        Zip Code

The above listed provider holds a license/certificate, _P06420_ (*Number*) as a _Pharmacy_ (*Type of Provider*) if required, under the laws of the Commonwealth of Kentucky to provide _Pharmacy Services_ (*Type of Service*) for which this agreement applies.

## 2. Scope of Agreement

This provider agreement sets forth the rights, responsibilities, terms and conditions governing the provider's participation in the Kentucky Medicaid program, Kentucky Health Care Partnership/Managed Behavioral Healthcare Organization (MBHO) and, for those providers participating in the Partnership/MBHO, supplements those terms and conditions imposed by the Partnership/MBHO governing board.

## 3. Medical Services to be Provided

The provider agrees to provide covered services to Medicaid recipients in accordance with all applicable federal and state laws, regulations, policies, and procedures relating to the provision of medical services according to Title XIX, the approved Waivers for Kentucky and, for those providers participating in the Partnership/MBHO, all applicable provisions of the pertinent contract for managed care and policies and procedures duly adopted by the governing board of the Partnership/MBHO applicable to provider and recipients of Title XIX services.

## 4. Assurances

The Provider:

(1) Agrees to maintain such records, including electronic storage media, as are necessary to document the extent of services furnished to Title XIX recipients for a minimum of 5 years or as required by state or federal laws, and for such additional time as may be necessary in the event of an audit exception,quality of care issue, or other dispute and to furnish the state or federal agencies with any information requested regarding payments claimed for furnishing services.

(2) Agrees to permit representatives of the state and federal government, and, for those providers participating in Partnership/MBHO, staff of the Kentucky Health Care Partnership/MBHO, to have the unrestricted right to examine, inspect, copy and audit all records pertaining to the provision of services furnished to, Title XIX recipients. Such examinations, inspections, copying and audits may be made without prior notice to the Provider. This right shall include the ability to interview facility staff during the course of any inspection, review, investigation or audit.

(3) Agrees to comply with the Civil Rights requirements set forth in 45 CFR Parts 80. 84, and 90 and the Americans with Disabilities Act (ADA), 42 USC 12101. Payments shall not be made to providers who discriminate on the basis of race, color, national origin, sex, disability, religion, age or marital status in the provision of services.

(4) Agrees to cooperate with applicable public health agencies to coordinate appropriate medical care for Title XIX recipients in order to ensure quality of care and avoid the provision of duplicate or unnecessary medical services.

(5) Assures awareness of the provisions of 42 U.S.C. §1320a-7b reproduced on the reverse side of this agreement and of the provisions of KRS 205.8451 to KRS 205.8483 relating to Medicaid Program Fraud and Abuse, and applicable Kentucky Administrative Regulations as specified in Title 907 relating to the Kentucky Health Care Partnerships and Managed Behavioral HealthCare Organizations and Provider Agreements.

(6) Agrees to inform the Cabinet for Health Services, Department for Medicaid Services, or the appropriate Partnership/MBHO,

    A. within 30 days of any change in the following:
        1. name;
        2. ownership;
        3. address; and
    B. within five (5) days of information concerning the following:

1. change in licensure/certification/regulation status;
2. regulation status;
3. disciplinary action by the appropriate professional association;
4. Criminal charges

(7) Agrees to the following:

a) to assume responsibility for appropriate, accurate, and timely submission of claims and encounter data whether submitted directly by the provider or by an agent;

b) that the provider's signature on this agreement constitutes compliance with the following: the transmitted information is true, accurate, and complete and any subsequent correction which alter the information contained therein will be transmitted promptly;

c) payment and satisfaction of claims will be from federal and state funds and that any false claims, statements, or documents or concealment or falsification of a material fact, may be prosecuted under applicable federal and state law.

(8) Agrees to participate in the quality assurance programs of the partnership/MBHO and the Department for Medicaid Services and understands that the data will be used for analysis of medical services provided to assure quality of care according to professional standards.

(9) Agrees if the provider is the purchaser of a pre-existing business enrolled in the Partnership/MBHO or Medicaid program, the purchasing provider agrees to assume any outstanding liabilities of the previous owners payable to the Partnership/MBHO or Medicaid program.

(10) Agrees to notify the Department for Medicaid Services and the Partnership/MBHO in writing of having filed for protection from creditors under the Bankruptcy Code within five (5) days of having filed a petition with the court. Notification shall include the number assigned the case by the court, and the identity of the court in which the petition was filed.

(11) Agrees to return any overpayment made by the Department for Medicaid Services, or Partnership/MBHO resulting from agency error in calculation of amount or review of submitted claims.

(12) Agrees to refund to the Kentucky State Treasurer, the processing fee incurred by the fiscal agent for the Department for Medicaid Services, in the event claim submission has an error rate of 25% or greater.

(13) Agrees if the named Provider in this agreement is a nursing facility or ICF/MR/DD this agreement shall begin on _____, 199___, with conditional termination on _____, 199___, and shall automatically terminate on _____, 199___, unless the facility is re-certified in accordance with applicable regulations and policies.

## 5. Payment
In consideration for the provision of approved Title XIX services rendered to Medicaid recipients and subject to the availability of federal and state funds;

(1) The Cabinet for Health Services, Department for Medicaid Services agrees to reimburse the provider according to current applicable federal and state laws, rules and regulations and policies of the Cabinet for Health Services for providers participating as direct Medicaid payment providers. Payment shall be made only

3

upon receipt of appropriate billings and reports as prescribed by the Cabinet for Health Services, Department for Medicaid Services.

(2) The Partnership/MBHO agrees to reimburse the provider according to the provisions of the Partnership/MBHO agreement with the provider. Payments shall be made only upon receipt of appropriate encounter data, claims and reports as prescribed by the Partnership/MBHO governing board.

## 6. Provider Certification

(1) If the provider is required to participate or hold certification under Title XVIII of the Social Security Act to provide Title XIX services, the provider assures such participation or certification is current and active.

(2) If the Provider is a specialty hospital providing psychiatric services to persons age 21 and under, the Provider shall be approved by the Joint Commission on Accreditation of Health Care Organizations. In the event that the Provider is a general hospital, the Provider shall be certified for participation under Title XVIII of the Social Security Act or the Joint Commission on the Accreditation of Health Care Organizations.

## 7. Lobbying Certification

The provider certifies that to the best of one's knowledge and belief, that during the preceding contract period, if any, and during the term of this agreement:

(1) No federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influence or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee or Congress, or an employee of a Member of Congress in connection with the awarding of any federal contract, the making of any

federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form-LLL 'Disclosure Form to Report Lobbying' in accordance with its instructions.

(3) The undersigned shall require that the language of this certification be included in the award documents for all sub-awards at all tiers (including subcontracts, sub-grants, and contracts under grants, loans, and cooperative agreements) and that all sub-recipients shall certify and disclose accordingly.

(4) This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into, submission of this certification is a prerequisite for making or entering into this transaction imposed under Section 1352 Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for such failure.

## 8. Termination

(1) The Department for Medicaid Services, Partnership/MBHO or provider shall have the right to terminate this agreement for any reason upon 30 days written notice served upon the other party by registered mail with return receipt requested. The

Partnership/MBHO or Department for Medicaid Services may terminate this agreement immediately for cause, or in accordance with state or federal laws, upon written notice served upon the Provider by registered mail with return receipt requested.

(2) If the provider is terminated by Medicare or Medicaid, the Partnership/MBHO shall also terminate the provider from participation.

(3) If there is a change of ownership of a nursing facility or ICF/MR/DD facility, the Cabinet for Health Services agrees to automatically assign this agreement to the new owner according to 42 CFR § 442.14.

**9. Incorporation of Attachments**
Attachments MAP-343B "Disclosure of Ownership and Control Interest"

_____,
_____ and
_____ are
attached hereto and incorporated by reference.

PROVIDER:

John M. Gould
_____
Name

Controller
_____
Title

10-15-98
_____
Date

**HEALTH CARE PARTNERSHIP OR MANAGED BEHAVIORAL HEALTH ORGANIZATION**

by: **AUTHORIZED OFFICIAL**

_____
Name

_____
Title

_____
Date

**DEPARTMENT FOR MEDICAID SERVICES**

_____
Name

_____
Title

12/15/98
_____
Date



(a) Making or causing to be made false statements or representations

Whoever

(1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program (as defined in subsection (f) of this section),

(2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to such benefit or payment,

(3) having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit or payment, or (B) the initial or continued right to any such benefit or payment of any other individual in whose behalf he has applied for or is receiving such benefit or payment, conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due or when no such benefit or payment is authorized,

(4) having made application to receive any such benefit or payment for the use and benefit of another and having received it, knowingly and willfully converts such benefit or payment or any part thereof to a use other than for the use and benefit of such other person,

(5) presents or causes to be presented a claim for a physician's service for which payment may be made under a Federal health care program and knows that the individual who furnished the service was not licensed as a physician, or

(6) knowingly and willfully disposes of assets (including by any transfer in trust) in order for an individual to become eligible for medical assistance under a State plan under subchapter XIX of this chapter, if disposing of the assets results in the imposition of a period of ineligibility for such assistance under section 1396p(c) of this title,

shall (i) in the case of such a statement, representation, concealment, failure, or conversion by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program, be guilty of a felony and upon conviction thereof fined not more than $25,000 or imprisoned for not more than five years or both, or (ii) in the case of such a statement, representation, concealment, failure, or conversion by any other person, be guilty of a misdemeanor and upon conviction thereof fined not more than $10,000 or imprisoned for not more than one year, or both. In addition, in any case where an individual who is otherwise eligible for assistance under a Federal health care program is convicted of an offense under the preceding provisions of this subsection, the administrator of such program may at its option (notwithstanding any other provision of such program) limit, restrict, or suspend the eligibility of that individual for such period (not exceeding one year) as it deems appropriate; but the imposition of a limitation, restriction, or suspension with respect to the eligibility of any individual under this sentence shall not affect the eligibility of any other person for assistance under the plan, regardless of the relationship between that individual and such other person.

(b) Illegal remunerations

(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, ordering, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(3) Paragraphs (1) and (2) shall not apply to—

(A) a discount or other reduction in price obtained by a provider of services or other entity under a Federal health care program if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider or entity under a Federal health care program;

(B) any amount paid by an employer to an employee, who has a bona fide employment relationship with such employer, for employment in the provision of covered items or services;

(C) any amount paid by a vendor of goods or services to a person authorized to act as a purchasing agent for a group of individuals or entities who are furnishing services reimbursed under a Federal health care program if—

(i) the person has a written contract, with each such individual or entity, which specifies the amount to be paid the person, which amount may be a fixed amount or a fixed percentage of the value of the purchases made by each such individual or entity under the contract, and

(ii) in the case of an entity that is a provider of services as defined in section 1395x(u) of this title, the person discloses (in such form and manner as the Secretary requires) to the entity and, upon request, to the Secretary the amount received from each such vendor with respect to purchases made by or on behalf of the entity;

(D) a waiver of any coinsurance under part B of subchapter XVIII of this chapter by a Federally qualified health care center with respect to an individual who qualifies for subsidized services under a provision of the Public Health Service Act [42 U.S.C.A. § 201 et seq.];

(E) any payment practice specified by the Secretary in regulations promulgated pursuant to section 14(a) of the Medicare and Medicaid Patient and Program Protection Act of 1987, and

(F) any remuneration between an organization and an individual or entity providing items or services, or a combination thereof, pursuant to a written agreement between the organization and the individual or entity if the organization is an eligible organization under section 1395mm of this title or if the written agreement, through a risk-sharing arrangement, places the individual or entity at substantial financial risk for the cost or utilization of the items or services, or a combination thereof, which the individual or entity is obligated to provide.

(c) False statements or representations with respect to condition or operation of institutions

Whoever knowingly and willfully makes or causes to be made, or induces or seeks to induce the making of, any false statement or representation of a material fact with respect to the conditions or operation of any institution, facility, or entity in order that such institution, facility, or entity may qualify (either upon initial certification or upon recertification) as a hospital, rural primary care hospital, skilled nursing facility, nursing facility, intermediate care facility for the mentally retarded, home health agency, or other entity (including an eligible organization under section 1395mm of this title) for which certification is required under subchapter XVIII of this chapter or a State health care program (as defined in section 1320c-3(d) of this title) or with respect to information required to be provided under section 1320a-3a of this title, shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years or both.

(d) Illegal patient admittance and retention practices

Whoever knowingly and willfully—

(1) charges, for any service provided to a patient under a State plan approved under subchapter XIX of this chapter, money or other consideration at a rate in excess of the rates established by the State, or

(2) charges, solicits, accepts, or receives, in addition to any amount otherwise required to be paid under a State plan approved under subchapter XIX of this chapter, any gift, money, donation, or other consideration (other than a charitable, religious, or philanthropic contribution from an organization or from a person unrelated to the patient)—

(A) as a precondition of admitting a patient to a hospital, nursing facility, or intermediate care facility for the mentally retarded, or

(B) as a requirement for the patient's continued stay in such a facility, when the cost of the services provided therein to the patient is paid for (in whole or in part) under the State plan, shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(e) Violation of assignment terms

Whoever accepts assignments described in section 1395u(b)(3)(B)(ii) of this title or agrees to be a participating physician or supplier under section 1395u(h)(1) of this title and knowingly, willfully, and repeatedly violates the term of such assignment or agreement shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $2,000 or imprisoned for not more than six months, or both.

(f) "Federal health care program" defined

For purposes of this section, the term "Federal health care program" means—

(1) any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of title 5); or

(2) any State health care program, as defined in section 1320c-3(d) of this title.

MAP-343B
Rev. (7/97)

999191292022

## COMMONWEALTH OF KENTUCKY
### DEPARTMENT FOR MEDICAID SERVICES
### KENTUCKY HEALTH CARE PARTNERSHIP
### MANAGED BEHAVIORAL HEALTH CARE ORGANIZATION

### DISCLOSURE OF OWNERSHIP AND CONTROL INTEREST

COMPLETION OF THIS FORM IS REQUIRED BY FEDERAL AND STATE LAW AND REGULATION (42 CFR § 455.104 AND KRS CHAPTER 205, AS AMENDED). FAILURE TO FULLY RESPOND TO THE QUESTIONS SET FORTH IN THIS FORM MAY RESULT IN DELAY IN APPROVAL OF YOUR APPLICATION FOR PROVIDER PARTICIPATION OR DENIAL OF YOUR APPLICATION FOR PARTICIPATION.

*All areas must be filled out in entirety. If you think that certain questions do not apply you may state not applicable. Please print or type information.*

dba United Pharmacy Associates      Pharmacy

Provider/Entity        Agent for Service of Process

1.   (A) Has there been a change of ownership, change of tax ID number, or change in Kentucky Provider Number for a previously enrolled Kentucky Medicaid provider?
    ✓ Yes       No .

If yes, give previous Kentucky Medicaid provider #: **5402088** and Effective Date **9/20/91**

If yes, describe the relationship between (1) the current provider disclosing information through this form and the previous Medicaid provider; and (2) the similarities, if any, between the corporate board of the current provider disclosing information and the previous Medicaid provider (corporate board members, any ownership or control interest, etc.) (3) circumstances of disenrollment. (You may attach additional sheet, if necessary.)
① No Relationship ② No similarities ③ Not seeking disenrollment only change in ownership status

(B) Do you anticipate any change of ownership or control within the year? ____ Yes ✓ No
If yes, when? _____

(C) Do you anticipate filing for bankruptcy within the year? ____ Yes ____
If yes, when? _____

(D) Is this provider/facility operated by a management company, or leased in whole or part by another organization? ____ Yes ✓ No
If yes, give name management company or leasor _____

(E) Has there been a change in Administrator, Director of Nursing or Medical Director within the last year? ____ Yes ✓ No
If yes, when? _____ List name and address _____

MAP-343B
Rev. (7/97)

199191292022

(F) Is this facility chain affiliated? _____✓_____ Yes _____ No
(If yes, list name, address of Corporation, and EIN#)
        NAME                ADDRESS                    EIN#
Omnicare Inc                                       31-1001351

    Suite 1550   100 E. Rivercenter Blvd Covington, Ky  41011

2.  List the name, address, and SS #/EIN# of each person or organization having direct or indirect
    ownership or control interest in the disclosing entity as defined by 42 CFR 455.101 and 102.
    Include social security number and/or IRS tax identification as appropriate.
            NAME                ADDRESS                      SS #/EIN#
    Same As Above = Indirect

Direct = Badger Acquisition LLC   EIN = 52-2119866   - Same Address Above

3.  List the name, address, and SS #/EIN # of each person with an ownership or control interest, as
    defined by 42 CFR 455.101 and 102, in any subcontractor in which the disclosing entity has
    direct or indirect ownership of 5 percent or more. Include social security number and/or IRS tax
    identification number of the subcontractor as appropriate.
            NAME                ADDRESS                      SS #/EIN#

            NOT APPLICABLE

4.  Are any of the individuals above related to one another as spouse, parent, child, or sibling
    (including step and adoptive relationship)?          _____ Yes _____ No

    If yes, complete the following information:
    Names              SS #/EIN #                  Relationship

            NOT APPLICABLE

5.  List the names of any other disclosing entity in which person(s) listed have ownership of other
    Medicare/Medicaid facilities as defined by 42 CFR 455.101 and 102.
            NAME                ADDRESS          PROVIDER NUMBERS

    N/A

6.  List the names and addresses of all other Kentucky Medicaid providers with which your health
    service and/or facility engages in a significant business transaction and/or a series of transactions
    that during any one (1) fiscal year exceed the lesser of $25,000 or 5% of your total operating
    expense.
            NAME                            N/A        ADDRESS

RECEIVED
NOV 1998

2

7. List the name, address, and social security number of any immediate family member who is authorized under Kentucky law to prescribe drugs, medicine, medical devices, or medical equipment in accordance with KRS 205.8477.

*Not Applicable*

8. List the name of any individuals or organizations having direct or indirect ownership or control interest of 5% or more in the institution, organizations, or agency that have been convicted of a criminal offense related to the involvement of such persons, or organizations in any program established under Title XVIII (Medicare), Title XIX (Medicaid), or Title XX (Social Services Block Grants) of the Social Security Act or any criminal offense in this state or any other state.

*NOT APPLICABLE*

9. List the name of any agent and/or managing employee of the disclosing entity who has been convicted of a criminal offense related to the involvement in any program established under Title XVIII, XIX, or XX of the Social Security Act or any criminal offense in this state or any other state.

*NOT APPLICABLE*

**WHOEVER KNOWINGLY OR WILLINGLY MAKES, OR CAUSES TO BE MADE, A FALSE STATEMENT OR REPRESENTATION OF THIS STATEMENT SHALL BE SUBJECT TO PROSECUTION UNDER APPLICABLE FEDERAL OR STATE LAWS. FAILURE TO FULLY AND ACCURATELY DISCLOSE THE INFORMATION REQUESTED SHALL RESULT IN A DENIAL OF A REQUEST TO PARTICIPATE IN OR TERMINATION OF THE CURRENT AGREEMENT WITH THE STATE AGENCY, AS REQUIRED BY 42 CFR 455.104 AND KRS CHAPTER 205 AS AMENDED.**

Provider Authorized Signature: I certify, under penalty of law, that the information given in this form is correct and complete to the best of my knowledge. I am aware that, should investigation at any time show any falsification, I will be considered for suspension from the Program and/or for prosecution for Medicaid fraud. I hereby authorize the Cabinet for Health Services, the Kentucky Health Care Partnership or Managed Behavioral Health Care Organization to make all necessary verification concerning me and/or my medical practice/facility, and further authorize each educational institute, medical/license board or organization to provide all information that may be needed in connection with my application for participation in the Kentucky Medicaid Program.

Signature: _____  Date: _____

Printed Name: *John M. Gould*

Title: *Controller*

(a) Making or causing to be made false statements or representations

Whoever—

(1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program (as defined in subsection (f) of this section),

(2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to such benefit or payment,

(3) having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit or payment, or (B) the initial or continued right to any such benefit or payment of any other individual in whose behalf he has applied for or is receiving such benefit or payment, conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due or when no such benefit or payment is authorized,

(4) having made application to receive any such benefit or payment for the use and benefit of another and having received it, knowingly and willfully converts such benefit or payment or any part thereof to a use other than for the use and benefit of such other person.

(5) presents or causes to be presented a claim for a physician's service for which payment may be made under a Federal health care program and knows that the individual who furnished the service was not licensed as a physician, or

(6) knowingly and willfully disposes of assets (including by any transfer in trust) in order for an individual to become eligible for medical assistance under a State plan under subchapter XIX of this chapter, if disposing of the assets results in the imposition of a period of ineligibility for such assistance under section 1396p(c) of this title,

shall (i) in the case of such a statement, representation, concealment, failure, or conversion by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program, be guilty of a felony and upon conviction thereof fined not more than $25,000 or imprisoned for not more than five years or both, or (ii) in the case of such a statement, representation, concealment, failure, or conversion by any other person, be guilty of a misdemeanor and upon conviction thereof fined not more than $10,000 or imprisoned for not more than one year, or both. In addition, in any case where an individual who is otherwise eligible for assistance under a Federal health care program is convicted of an offense under the preceding provisions of this subsection, the administrative of such program may at its option (notwithstanding any other provision of such program) limit, restrict, or suspend the eligibility of that individual for such period (not exceeding one year) as it deems appropriate, but the imposition of a limitation, restriction, or suspension with respect to the eligibility of any individual under this sentence shall not affect the eligibility of any other person for assistance under the plan, regardless of the relationship between that individual and such other person.

(b) Illegal remunerations

(1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind-
(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person-
(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(3) Paragraphs (1) and (2) shall not apply to-
(A) a discount or other reduction in price obtained by a provider of services or other entity under a Federal health care program if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider or entity under a Federal health care program,

(B) any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services;

(C) any amount paid by a vendor of goods or services to a person authorized to act as a purchasing agent for a group of individuals or entities who are furnishing services reimbursed under a Federal health care program if-
(i) the person has a written contract, with each such individual or entity, which specifies the amount to be paid the person, which amount may be a fixed amount or a fixed percentage of the value of the purchases made by each such individual or entity under the contract, and

(ii) in the case of an entity that is a provider of services (as defined in section 1395x(u) of this title), the person discloses (in such form and manner as the Secretary requests) to the entity and, upon request, to the Secretary the amount received from each such vendor with respect to purchases made by or on behalf of the entity,

(D) a waiver of any coinsurance under part B of subchapter XVIII of this chapter by a Federally qualified health care center with respect to an individual who qualifies for subsidized services under a provision of the Public Health Service Act [42 U.S.C.A. § 201 et seq.];

(E) any payment practice specified by the Secretary in regulations promulgated pursuant to section 14(a) of the Medicare and Medicaid Patient and Program Protection Act of 1987; and

(F) any remuneration between an organization and an individual or entity providing items or services, or a combination thereof, pursuant to a written agreement between the organization and the individual or entity if the organization is an eligible organization under section 1395mm of this title or if the written agreement, through a risk-sharing arrangement, places the individual or entity at substantial financial risk for the cost or utilization of the items or services, or a combination thereof, which the individual or entity is obligated to provide.

(c) False statements or representations with respect to condition or operation of institutions

Whoever knowingly and willfully makes or causes to be made, or induces or seeks to induce the making of, any false statement or representation of a material fact with respect to the conditions or operation of any institution, facility, or entity in order that such institution, facility, or entity may qualify (either upon initial certification or upon rectification) as a hospital, rural primary care hospital, skilled nursing facility, nursing facility, intermediate care facility for the mentally retarded, home health agency, or other entity (including an eligible organization under section 1395mm(b) of this title) for which a certification is required under subchapter XVIII of this chapter or a State health care program (as defined in section 1320a-7(h) of this title), or with respect to information required to be provided under section 1320a-3a of this title, shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(d) Illegal patient admittance and retention practices

Whoever knowingly and willfully-
(1) charges, for any service provided to a patient under a State plan approved under subchapter XIX of this chapter, money or other consideration at a rate in excess of the rates established by the State, or

(2) charges, solicits, accepts, or receives, in addition to any amount otherwise required to be paid under a State plan approved under subchapter XIX of this chapter, any gift, money, donation, or other consideration (other than a charitable, religious, or philanthropic contribution from an organization or from a person unrelated to the patient)-
(A) as a precondition of admitting a patient to a hospital, nursing facility, or intermediate care facility for the mentally retarded, or

(B) as a requirement for the patient's continued stay in such a facility, when the cost of the services provided therein to the patient is paid for (in whole or in part) under the State plan, shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(e) Violation of assignment terms

Whoever accepts assignments described in section 1395u(b)(3)(B)(ii) of this title or agrees to be a participating physician or supplier under section 1395u(h)(1) of this title and knowingly, willfully, and repeatedly violates the term of such assignments or agreement, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $2,000 or imprisoned for not more than six months, or both.

(f) "Federal health care program" defined

For purposes of this section, the term "Federal health care program" means-
(1) any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of Title 5); or

(2) any State health care program, as defined in section 1320a-7(h) of this title.

MAP-344
Rev. (7/97)

199191292022

KENTUCKY MEDICAID PROGRAM

PROVIDER INFORMATION

Old # 54020888

1. _Badger Acquisition of Kentuck, LLC_  _Applying for #_
   (Provider/Entity)                      (Provider Number)

2. _United Pharmacy Associates_  _Pharmacy_
   DBA                            (Type of Provider)

3. _1900 Highway 41 N #4_
   (Physical Location Address: Street, Route)

4. _Henderson_        _Henderson_      _Kentucky_     _42420-2662_
   (City)             (County)         (State)        (Zip Code)

5. _502-826-6790_              _Same # Linda Minton_
   (Office Phone # of Provider)  (Billing Office Phone # and Contact Person)

6. _Same_
   (Correspondence Address, if different from physical location)

   _____
   (City)           (County)         (State)         (Zip Code)

7. _Same_
   (Pay to Address, if different from physical location)

   _____
   (City)           (County)         (State)         (Zip Code)

8. _52-2119911_                 9. _N/A_
   (Federal Employee I.D.#)        (Social Security #)

10. _PO6420 -Ky_        11. _____
    (License # and State)   (Medicare Numbers- If pending must notify us in
                             writing when received from Medicare)

12. _N/A_               13. _N/A_
    (UPIN #)                (NPI #)

14. _Kentucky Board of Pharmacy_  15. _9/16/98_
    (Licensing/Certification Board)   (Original License/Certification Date)
                                      (Must be attached)

16. _N/A_               17. _N/A_
    (CLIA #)                (Type of CLIA Certificate)

RECEIVED
PROVIDER
SERVICES BRANCH

1

MAP-344
Rev. (7/97)

18. Physician/Professional Specialty Certification Board: _____

    _____ NOT APPLICABLE _____

    1st _____        Date _____

    2nd _____         Date _____

    Attach Copy of Board Certification.

19. Federal DEA # and Date Assigned: _BB609/069_    _10/27/1998_

20. Practice Organization/Structure:
    _____ (A) Individual          ___✓___ (E) Corporation
    _____ (B) Sole Proprietor     _____ (F) Public Service Corporation
    _____ (C) Partnership*        _____ (G) Government/Non-Profit
    _____ (D) Estate/Trust        _____ Other _____
    *Refers to tax structure not Managed Care Partnerships          Specify

21. If Corporation, list name, address and SS # of Officers and Board Members:

    NAME                    ADDRESS                    SS#

    _SEE ATTACHED_

22. If partnership*, list name, address, and SS #/EIN # of partners:

    NAME                    ADDRESS                    SS #/EIN#

    NOT APPLICABLE

    *Refers to tax structure not Managed Care Partnerships

23. If sole proprietor, give name, address, and phone number of owner:

    NOT APPLICABLE

    (A) List name of agent for service of process:

    _____

2

MAP-344
Rev. (7/97)

199191292022

24.  Control of Medical Facility, Provider, or Service:   NOT APPLICABLE

_____ Federal        _____State        _____County        _____City
_____ Charitable or Religious        _____Proprietary (Privately-Owned)
_____ Other  Specify: _____

25.  If facility, provider, or service is government owned, list names and address of board members:

President/Chairman   NOT APPLICABLE
_____

Member: _____

Member: _____

TO BE COMPLETED BY FACILITY ONLY   – NOT APPLICABLE
*****************************************************************************************

26.  Distribution of beds in facility:  Acute (including Swing) _____ ICU _____
CCU _____ TCU _____ Burn ICU _____ Surgical ICU _____.
Psych _____ Rehab _____ Nursery _____ Neonatal _____
Chemical Dep. _____   Nursing (SNF, LTC, NF, etc.) _____
Intermediate Care _____   Nursery Bassinets _____ Other _____
                                                                                     (Specify)

27.  Have you increased your bed capacity by 10% or by 10 beds, whichever is greater, within the last
2 years?                          _____ Yes              _____ No
If yes, give year of change.         _____ Current Beds _____ Prior Beds

28.  Fiscal Year End: _____

29.  Administrator: _____

30.  Assistant Administrator: _____        Phone # _____

31.  Controller: _____        Phone # _____

32.  Accountant or CPA: _____        Phone # _____

33.  Management Firm: _____

34.  Lessor: _____

NOV 1998
RECEIVED

3

MAP-344
Rev. (7/97)

Provider Authorized Signature: I certify, under penalty of law, that the information given in this Information Sheet is correct and complete to the best of my knowledge. I am aware that, should investigation at any time show any falsification, I will be considered for suspension from the Program and/or for prosecution for Medicaid fraud. I hereby authorize the Cabinet for Health Services to make all necessary verification concerning me and/or my medical practice/facility, and further authorize each educational institute, medical/license board or organization to provide all information that may be needed in connection with my application for participation in the Kentucky Medicaid Program.

Signature: _____ Date: _11/11/98_

Printed Name: _John M. Gould_

Title: _Controller_

FOR INDIVIDUAL PROVIDERS ONLY

COMPLETION OF THIS SECTION IS VOLUNTARY

Information is used ONLY for statistical purposes.

| RACE | SEX | DATE OF BIRTH |
|------|-----|---------------|
|      |     |               |

4

# United Pharmacy Associates 1991?; 202022 Henderson

## List of Officers

Tracy Finn
President
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
1000 Hatch
Cincinnati, Ohio 45202

Bradley S. Abbott
Vice President
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
635 Meadow Wood Drive
Crescent Springs, Kentucky 41017

Thomas R. Marsh
Treasurer
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
3068 Balsam Court
Edgewood, Kentucky 41017

Catherine I. Greany
Secretary
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
3203 Golden Avenue, Apartment 504
Cincinnati, Ohio 45226

---

## List of Directors

Tracy Finn
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
1000 Hatch
Cincinnati, Ohio 45202

Bradley S. Abbott
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
635 Meadow Wood Drive
Crescent Springs, Kentucky 41017

Catherine I. Greany
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
3203 Golden Avenue, Apartment 504
Cincinnati, Ohio 45226



NOV 1993
RECEIVED
CORPORATIONS
SECRETARY

199191292022

CONTROLLED SUBSTANCE REGISTRATION CERTIFICATE
UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION
WASHINGTON, D.C. 20537

| DEA REGISTRATION NUMBER | THIS REGISTRATION EXPIRES | FEE PAID |
|---|---|---|
| BB6091069 | 07-31-2001 | $210.00 |

| SCHEDULES | BUSINESS ACTIVITY | DATE ISSUED |
|---|---|---|
| 2,2N,3,3N,4,5 | RETL PHARMACY | 10-27-1998 |

BADGER ACQUISITION OF KY CL(
DBA: UNITED PHARMACY ASSOC
1900 HWY 41 NORTH #41
HENDERSON, KY

42420

THIS CERTIFICATE IS NOT TRANSFERABLE ON CHANGE OF OWNERSHIP, CONTROL, LOCATION, BUSINESS ACTIVITY, OR VALID AFTER THE EXPIRATION DATE.


NOV 1998
RECEIVED

# COMMONWEALTH OF KENTUCKY

KENTUCKY BOARD OF PHARMACY
1024 CAPITAL CENTER DR., STE. 210
Frankfort, Kentucky 40601-8204

LICENSE / PERMIT: **PHARMACY**

EFFECTIVE DATE: **9/29/98**

NUMBER: **P06420**

EXPIRATION DATE: **6/30/99**

Issued to:

PIC: **BERNARD GREGOROWICZ**

**UNITED PHARMACY ASSOCIATES**
**1900 U S HWY 41 N #4**
**HENDERSON KY 42420**

MUST BE CONSPICUOUSLY DISPLAYED

ISSUED PURSUANT TO KRS CHAPTER 315



NOV 1998

199191292022 54034053
11-11-97
C
8-30-99

TO: Program Integrity Section for Review

FROM: SHIRLEY MILLS

DATE: 12/1/98

PROVIDER:

tem V
54020 88

//////////////////////////////////////////////////////////////////////////////////////

PROGRAM INTEGRITY RESPONSE:

The Program Integrity Unit has reviewed the attached enrollment application and has the following comments:

_____ None
Applicant does not appear on any dockets made available to the Program Integrity unit.

Other:

_____
_____
_____
_____

Application reviewed by _J.W._ Date: 12 7 98

Any questions call: (502) 564-5472

Commonwealth of Virginia
Department of Medical Assistance Services
Medical Assistance Program

# Durable Medical Equipment and Supplies Participation Agreement

Check this box if requesting new number

Enter rolling under Medical Provider Number here

**This is to certify:**

| | PAYMENT/CORRESPONDENCE ADDRESS | PHYSICAL ADDRESS (REQUIRED IF DIFFERENT FROM PAYMENT ADD) |
|---|---|---|
| NAME | Omnicare Health Network | |
| ATTENTION | Andy Hner | 7465 White Pine Run |
| ADDR LINE 1 | 3256 W. Henderson Rd. | Richmond, VA 232 |
| ADDR LINE 2 | | |
| CITY, STATE, ZIP | Columbus, Oh 43220 | |

on this _____ day of _____ agrees to participate in the Virginia Medical Ass
Program (VMAP), the Department of Medical Assistance Services, the legally designated State Agency for the administration of V

Supplies dispensed require a Virginia Department of Health Professions Permit? One of the boxes must be checked.

[✓] No  Copy of business license is not listed
[ ] Yes  Pharmacy or Medical Equipment Supply DHP permit number is listed in the appropriate field below.

1. Services will be provided without regard to age, sex, race, color, religion, national origin, or type of illness or condition.  No individual shall, solely by reason of his handicap be excluded from participation in, be denied the benefits of, or be subjected to discrimination in Section 504 of the Rehabilitation Act of 1973 (29 §USC 794) VMAP.

2. Services rendered must be those provided according to a physician's written order.  Payment is to be made only to those providers render the services. Upon accepting a Medicaid recipient as a patient, the provider agrees to supply all items prescribed and author recipient which the provider supplies to the general public.

3. The provider agrees to keep such records as VMAP determines necessary.  The provider will furnish VMAP on request informat payments claimed for providing services under the state plan.  Access to records and facilities by authorized VMAP represe Attorney General or his authorized representatives, and federal personnel will be permitted under reasonable request.

4. The provider agrees that charges submitted for services rendered will be based on the usual, customary, and reasonable conce that all requests for payment will comply in all respects with the policies of VMAP for the submission of claims.

5. Payment by VMAP at its established rates for services covered constitutes full payment on behalf of the recipient. The provider submit additional charges to the recipient for services covered by VMAP.  The collection or receipt of any money, gift, dona consideration from or on behalf of a medical assistance recipient for any service provided under medical assistance is expressly pr

6. The provider agrees to pursue all other available third party payment sources prior to submitting a claim to VMAP.

7. Should an audit by authorized state or federal officials result in disallowance of amounts previously paid to the provider by VMAP will reimburse VMAP upon demand.

8. The provider agrees to comply with all applicable state and federal laws, as well as administrative policies and procedures of VMAP to time amended.

9. The provider of respiratory ventilator equipment agrees to provide authorized maintenance and preventive services for ventilators VMAP recipients.

10. This agreement may be terminated at will on thirty days' written notice by either party or by VMAP when the provider is no long participate in the Program.

11. All disputes regarding provider reimbursement and/or termination of this agreement by VMAP for any reason shall be reso administrative proceedings conducted at the office of VMAP in Richmond, Virginia. These administrative proceedings and judi such administrative proceedings shall be pursuant to the Virginia Administrative Process Act.

12. This agreement shall commence on 11/1/99 . Your continued participation in the Virginia Medicaid Program is con the timely renewal of your license. Failure to renew your licensing authority shall result in the termination of your Medicaid Participation

| For First Health's Use only | For Provider of Services |
|---|---|
| | Original Signature of Provider    2/23 |
| | ✓ City or County of Springfield, Oh |
| | IRS Identification Number          (Area Code) Te eph |
| | 52-2119875 | 800-29 |
| | Pharmacy Permit Number    DME Permit Number (VA Board of Pharmacy) (VA Board of Pharmacy) |
| Director, Division of Program Operations    Date | Medicare Carrier and Vendor Number |

IRS Name (required)
mail one completed
original agreement
to:

First Health - VMAP Provider Enrollment Unit
PO Box 26803
Richmond, Virginia 23261-6803

EXHIBIT
A-4