

LEXSTAT CAL GOVT CODE 12650

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2010 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 2009-2010 EXTRAORDINARY SESSIONS 1-5, ***
7, AND 8, AND URGENCY LEGISLATION THROUGH CH 17 OF THE 2010 REGULAR SESSION

GOVERNMENT CODE
Title 2.  Government of the State of California
Division 3.  Executive Department
Part 2.  Constitutional Officers
Chapter 6.  Attorney General
Article 9.  False Claims Actions

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Gov Code § 12650 (2009)*

## § 12650.  Citation of article; Definitions

(a) This article shall be known and may be cited as the False Claims Act.

(b) For purposes of this article:

(1) "Claim" means any request or demand, whether under a contract or otherwise, for money, property, or services, and whether or not the state or a political subdivision has title to the money, property, or services that meets either of the following conditions:

(A) Is presented to an officer, employee, or agent of the state or of a political subdivision.

(B) Is made to a contractor, grantee, or other recipient, if the money, property, or service is to be spent or used on a state or any political subdivision program or interest, and if the state or political subdivision meets either of the following conditions:

(i) Provides or has provided any portion of the money, property, or service requested or demanded.

(ii) Reimburses the contractor, grantee, or other recipient for any portion of the money, property, or service that is requested or demanded.

(2) "Claim" does not include requests or demands for money, property, or services that the state or a political subdivision has paid to an individual as compensation for employment with the state or political subdivision or as an income subsidy with no restrictions on that individual's use of the money, property, or services.


EXHIBIT
B-1
PENGAD-Bayonne, N.J.

**(3)** "Knowing" and "knowingly" mean that a person, with respect to information, does any of the following:

**(A)** Has actual knowledge of the information.

**(B)** Acts in deliberate ignorance of the truth or falsity of the information.

**(C)** Acts in reckless disregard of the truth or falsity of the information.

Proof of specific intent to defraud is not required.

**(4)** "Material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money, property, or services.

**(5)** "Political subdivision" includes any city, city and county, county, tax or assessment district, or other legally authorized local governmental entity with jurisdictional boundaries.

**(6)** "Political subdivision funds" means funds that are the subject of a claim presented to an officer, employee, or agent of a political subdivision or where the political subdivision provides, has provided, or will reimburse any portion of the money, property, or service requested or demanded.

**(7)** "Prosecuting authority" refers to the county counsel, city attorney, or other local government official charged with investigating, filing, and conducting civil legal proceedings on behalf of, or in the name of, a particular political subdivision.

**(8)** "Person" includes any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust.

**(9)** "State funds" mean funds that are the subject of a claim presented to an officer, employee, or agent of the state or where the state provides, has provided, or will reimburse any portion of the money, property, or service requested or demanded.

## HISTORY:

Added Stats 1987 ch 1420 § 1. Amended Stats 1994 ch 1010 § 141 (SB 2053); Stats 1997 ch 300 § 3 (AB 1586), effective August 18, 1997; Stats 2009 ch 277 § 1 (AB 1196), effective January 1, 2010.

## NOTES:

**Amendments:**


**1994 Amendment:**

Added "limited liability company," in subd (e).


**1997 Amendment:**

**(1)** Added subd (a); and **(2)** redesignated former subds (a)-(e) to be subds (b)-(b)(5).



LEXSTAT CA GOV 12651

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2010 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 2009-2010 EXTRAORDINARY SESSIONS 1-5, ***
7, AND 8, AND URGENCY LEGISLATION THROUGH CH 17 OF THE 2010 REGULAR SESSION

GOVERNMENT CODE
Title 2.   Government of the State of California
Division 3.   Executive Department
Part 2.   Constitutional Officers
Chapter 6.   Attorney General
Article 9.   False Claims Actions

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Gov Code § 12651* (2010)

**§ 12651.   Liability for damages; Costs; Civil penalty; Minimum amount in controversy**

(a) Any person who commits any of the following enumerated acts in this subdivision shall have violated this article and shall be liable to the state or to the political subdivision for three times the amount of damages that the state or political subdivision sustains because of the act of that person. A person who commits any of the following enumerated acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and shall be liable to the state or political subdivision for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) for each violation:

(1) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval.

(2) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim.

(3) Conspires to commit a violation of this subdivision.

(4) Has possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less than all of that property.

(5) Is authorized to make or deliver a document certifying receipt of property used or to be used by the state or by any political subdivision and knowingly makes or delivers a receipt that falsely represents the property used or to be used.

(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property.

(7) Knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision.

**(8)** Is a beneficiary of an inadvertent submission of a false claim, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

**(b)** Notwithstanding subdivision (a), the court may assess not less than two times and not more than three times the amount of damages which the state or the political subdivision sustains because of the act of the person described in that subdivision, and no civil penalty, if the court finds all of the following:

**(1)** The person committing the violation furnished officials of the state or of the political subdivision responsible for investigating false claims violations with all information known to that person about the violation within 30 days after the date on which the person first obtained the information.

**(2)** The person fully cooperated with any investigation by the state or a political subdivision of the violation.

**(3)** At the time the person furnished the state or the political subdivision with information about the violation, no criminal prosecution, civil action, or administrative action had commenced with respect to the violation, and the person did not have actual knowledge of the existence of an investigation into the violation.

**(c)** Liability under this section shall be joint and several for any act committed by two or more persons.

**(d)** This section does not apply to any controversy involving an amount of less than five hundred dollars ($500) in value. For purposes of this subdivision, "controversy" means any one or more false claims submitted by the same person in violation of this article.

**(e)** This section does not apply to claims, records, or statements made pursuant to Division 3.6 (commencing with Section 810) of Title 1 or to workers' compensation claims filed pursuant to Division 4 (commencing with *Section 3200) of the Labor Code.*

**(f)** This section does not apply to claims, records, or statements made under the Revenue and Taxation Code.

**(g)** This section does not apply to claims, records, or statements for the assets of a person that have been transferred to the Commissioner of Insurance, pursuant to *Section 1011 of the Insurance Code.*

**HISTORY:**

Added Stats 1987 ch 1420 § 1. Amended Stats 2007 ch 577 § 5 (AB 1750), effective October 13, 2007; Stats 2009 ch 277 § 2 (AB 1196), effective January 1, 2010.

**NOTES:**

**Amendments:**

**2007 Amendment:**

Substituted "not less than five thousand dollars ($5,000) and not more than" for "up to" in the introductory clause of subd (a).

**2009 Amendment:**

(1) Added "enumerated" in the first and second sentences of the introductory paragraph of subd (a); (2) amended the first sentence of the introductory paragraph of subd (a) by substituting (a) "in this subdivision shall have violated this article and shall" for "shall"; and (b) "that the state or" for "which the state or the"; (3) amended the second sentence of the introductory paragraph of subd (a) by substituting (a) "shall be liable" for "may be liable"; and (b) "violation" for "false claim"; (4) substituted "a false or fraudulent" for "to an officer or employee of the state or of any political subdivision thereof, a false" in subd (a)(1); (5) substituted "material to a false or fraudulent claim" for "to get a false claim paid or approved by the state or by any political subdivision" in subd (a)(2); (6) substituted "commit a violation of this" for "defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any politi-



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2010 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** THIS DOCUMENT IS CURRENT THROUGH 2009-2010 EXTRAORDINARY SESSIONS 1-5, ***
7, AND 8, AND URGENCY LEGISLATION THROUGH CH 17 OF THE 2010 REGULAR SESSION

WELFARE AND INSTITUTIONS CODE
Division 9. Public Social Services
Part 3. Aid and Medical Assistance
Chapter 7. Basic Health Care
Article 3. Administration

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Wel & Inst Code § 14107.2 (2009)*

**§ 14107.2. Punishment for bribe, rebate, or kickback**

(a) Any person who solicits or receives any remuneration, including, but not restricted to, any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in valuable consideration of any kind, either:

(1) In return for the referral, or promised referral, of any individual to a person for the furnishing or arranging for the furnishing of any service or merchandise for which payment may be made, in whole or in part, under this chapter or Chapter 8 (commencing with Section 14200); or

(2) In return for the purchasing, leasing, ordering, or arranging for or recommending the purchasing, leasing, or ordering of any goods, facility, service or merchandise for which payment may be made, in whole or in part, under this chapter or Chapter 8 (commencing with Section 14200), is punishable upon a first conviction by imprisonment in a county jail for not longer than one year or state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine. A second or subsequent conviction shall be punishable by imprisonment in the state prison.

(b) Any person who offers or pays any remuneration, including, but not restricted to, any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in valuable consideration of any kind, either:

(1) To refer any individual to a person for the furnishing or arranging for furnishing of any service or merchandise for which payment may be made, in whole or in part, under this chapter or Chapter 8 (commencing with Section 14200); or

(2) To purchase, lease, order, or arrange for or recommend the purchasing, leasing, or ordering of any goods,

facility, service, or merchandise for which payment may be made, in whole or in part, under this chapter or Chapter 8 (commencing with Section 14200), is punishable upon a first conviction by imprisonment in a county jail for not longer than one year or state prison, or by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine. A second or subsequent conviction shall be punishable by imprisonment in the state prison.

(c) Subdivisions (a) and (b) shall not apply to the following:

(1) Any amount paid by an employer to an employee, who has a bona fide employment relationship with that employer, for employment with provision of covered items or services.

(2) A discount or other reduction in price obtained by a provider of services or other entity under this chapter or Chapter 8 (commencing with Section 14200), if the reduction in price is properly disclosed and reflected in the costs claimed or charges made by the provider or entity under this chapter or Chapter 8 (commencing with Section 14200). This paragraph shall not apply to consultant pharmaceutical services rendered to nursing facilities nor to all categories of intermediate care facilities for the developmentally disabled.

(3) The practices or transactions between a federally qualified health center, as defined in Section 1396d(l)(2)(B) of Title 42 of the United States Code, and any individual or entity shall be permitted only to the extent sanctioned or permitted by federal law.

(4) The provision of nonmonetary remuneration in the form of hardware, software, or information technology and training services, as described in subsections (x) and (y) of *Section 1001.952 of Title 42 of the Code of Federal Regulations,* as amended October 4, 2007, as published in the Federal Register *(72 Fed. Reg. 56631, 56644),* and subsequently amended versions.

(d) For purposes of this section, "kickback" means a rebate or anything of value or advantage, present or prospective, or any promise or undertaking to give any rebate or thing of value or advantage, with a corrupt intent to unlawfully influence the person to whom it is given in actions undertaken by that person in his or her public, professional, or official capacity.

(e) The enforcement remedies provided under this section are not exclusive and shall not preclude the use of any other criminal or civil remedy.

**HISTORY:**

Added Stats 1980 ch 947 § 2. Amended Stats 1989 ch 731 § 11; Stats 1990 ch 1329 § 17 (SB 1524), effective September 25, 1990; Stats 2006 ch 772 § 2 (AB 2282), effective January 1, 2007; Stats 2007 ch 130 § 247 (AB 299), effective January 1, 2008; Stats 2008 ch 290 § 2 (AB 55), effective September 25, 2008; Stats 2009 ch 140 § 206 (AB 1164), effective January 1, 2010.

**NOTES:**

**Amendments:**

**1989 Amendment:**

In addition to making technical changes, substituted "nursing" for "skilled nursing facilities and intermediate care" before "facilities" at the end of subd (c)(2).

**C**

West's Annotated Indiana Code Currentness
  Title 4. State Offices and Administration
    Article 6. Attorney General
      Chapter 10. State Medicaid Fraud Control Unit
        → 4-6-10-1.5 Investigatory powers

Sec. 1.5. The state Medicaid fraud control unit has the authority to:

  (1) investigate, in accordance with federal law (42 U.S.C. 1396 et seq.):

    (A) Medicaid fraud;

    (B) misappropriation of a Medicaid patient's private funds;

    (C) abuse of Medicaid patients; and

    (D) neglect of Medicaid patients; and

  (2) investigate, in accordance with federal law (42 U.S.C. 1396 et seq.) and as allowed under 42 U.S.C. 1396b(q)(4)(A)(ii), abuse or neglect of patients in board and care facilities.

CREDIT(S)

As added by P.L.73-2003, SEC.1.

CROSS REFERENCES

  Civil action; finding in favor of attorney general; treble damages; civil penalties; reimbursement of investigation costs, see IC 12-15-23-8.

LIBRARY REFERENCES

2009 Main Volume

  Antitrust and Trade Regulation ☞339.
  Westlaw Topic No. 29T.
  C.J.S. Credit Reporting Agencies; Consumer Protection § 98.

NOTES OF DECISIONS

  Medicaid fraud 1

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


EXHIBIT
B-2


C

West's Annotated Indiana Code Currentness
  Title 12. Human Services
    Article 15. Medicaid
      Chapter 23. Improper Payments
        → **12-15-23-6 Determination by Medicaid fraud control unit; certification of facts to prosecuting attorney; reference of matter to attorney general**

Sec. 6. (a) If the state Medicaid fraud control unit determines that an action based on the state Medicaid fraud control unit's investigations under the unit's authority under IC 4-6-10-1.5 is meritorious, the unit shall certify the facts drawn from the investigation to the prosecuting attorney of the judicial circuit in which the crime may have been committed.

(b) The state Medicaid fraud control unit shall assist the prosecuting attorney in prosecuting an action under this section.

(c) A prosecuting attorney to whom facts are certified under subsection (a) may refer the matter to the attorney general.

(d) If a matter has been referred to the attorney general under subsection (c), the attorney general may:

  (1) file an information in a court with jurisdiction over the matter in the county in which the offense is alleged to have been committed; and

  (2) prosecute the alleged offense.

CREDIT(S)

As added by P.L.2-1992, SEC.9. Amended by P.L.10-1994, SEC.5; P.L.73-2003, SEC.3; P.L.149-2006, SEC.1.

HISTORICAL AND STATUTORY NOTES

2007 Main Volume

P.L.10-1994, Sec.5, added Subsecs. (c) and (d).

2003 Legislation

P.L.73-2003, Sec.3, amended this section by inserting "under the unit's authority under IC 4-6-10-1.5" in Subsec. (a).

2006 Legislation

P.L.149-2006, Sec.1, amended this section by deleting "concerning alleged Medicaid fraud" in Subsec. (c).

Formerly:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**C**

West's Annotated Indiana Code Currentness
   Title 12. Human Services
      Article 15. Medicaid
         Chapter 23. Improper Payments
            → 12-15-23-7 Action by attorney general; reference to administrator

Sec. 7. The attorney general may do either of the following:

   (1) Bring a civil action upon the facts certified to the attorney general by the state Medicaid fraud control unit.

   (2) Refer the matter to the administrator for appropriate action under IC 12-15-22.

CREDIT(S)

As added by P.L.2-1992, SEC.9.

HISTORICAL AND STATUTORY NOTES

2007 Main Volume

Formerly:

   IC 12-1-7-15.9.

   Acts 1973, P.L.21, SEC.10.

   Acts 1982, P.L.21, SEC.24.

   P.L.138-1985, SEC.1.

LIBRARY REFERENCES

2007 Main Volume

   Health ☞487(5).
   Social Security and Public Welfare ☞18.
   Westlaw Topic Nos. 198H, 356A.
   C.J.S. Social Security and Public Welfare § 264.

I.C. 12-15-23-7, IN ST 12-15-23-7

Current through 2010 Public Laws approved and effective through 3/25/2010 (except for P.L. 1-2010).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



1 of 1 DOCUMENT

BURNS INDIANA STATUTES ANNOTATED
© 2010 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Statutes current through P.L.1-2010 thru P.L.36-2010, P.L.43-2010 thru P.L.58-2010, P.L.62-2010, P.L.73-2010, P.L.75-2010, P.L.78-2010, P.L.79-2010, P.L.82-2010, P.L.87-2010, P.L.93-2010 thru P.L.96-2010, P.L.99-2010 thru P.L.101-2010, P.L.103-2010 thru P.L.105-2010, P.L.107-2010, and P.L.109-2010 thru P.L.112-2010 of the 2010 Second Regular Session ***
*** Annotations current through January 28, 2010 ***

Title 12  Human Services
Article 15  Medicaid
Chapter 23  Improper Payments

*Burns Ind. Code Ann. § 12-15-23-8*  (2010)

**12-15-23-8.  Civil penalties.**

(a) Subject to subsection (b), if the court finds in favor of the attorney general in a civil action brought by the attorney general under section 7 [*IC 12-15-23-7*] of this chapter, the court may do the following:

(1) Award damages against the provider of not more than three (3) times the amount paid to the provider in excess of the amount that was legally due.

(2) Assess a civil penalty against the provider of not more than five hundred dollars ($500) for each instance of overpayment found by the court.

(3) Order the provider to reimburse the attorney general for the reasonable costs of the attorney general's investigation and enforcement action.

(4) Take any combination of the actions described in subdivisions (1), (2), and (3).

(b) The court may only take action under subsection (a)(2) and (a)(3) if the provider knew or had reason to know that an item or a service was not provided as claimed.

**HISTORY:** P.L.2-1992, § 9; P.L.73-2003, § 4.



BURNS INDIANA STATUTES ANNOTATED
© 2010 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Statutes current through P.L.1-2010 thru P.L.36-2010, P.L.43-2010 thru P.L.58-2010, P.L.62-2010, P.L.73-2010, P.L.75-2010, P.L.78-2010, P.L.79-2010, P.L.82-2010, P.L.87-2010, P.L.93-2010 thru P.L.96-2010, P.L.99-2010 thru P.L.101-2010, P.L.103-2010 thru P.L.105-2010, P.L.107-2010, and P.L.109-2010 thru P.L.112-2010 of the 2010 Second Regular Session ***
*** Annotations current through January 28, 2010 ***

Title 12   Human Services
Article 15   Medicaid
Chapter 24   Theft; Kickbacks and Bribes

*Burns Ind. Code Ann. § 12-15-24-1*   (2010)

**12-15-24-1.  Evidence of theft.**

Evidence that a person or provider received money or other benefits as a result of a violation of:

(1) A provision of this article; or

(2) A rule established by the secretary under this article;

constitutes prima facie evidence, for purposes of *IC 35-43-4-2*, that the person or provider intended to deprive the state of a part of the value of the money or benefits.

**HISTORY:** P.L.2-1992, § 9.

**NOTES:**

**Notes to Decisions**
  Theft Not Charged.

   **Theft Not Charged.**

   The General Assembly has not proscribed a charge in excess of the "usual and customary charge" within the meaning of the state's Medicaid fraud statutes, and inasmuch as plaintiff was not charged with theft, the court was prohibited from expanding the Medicaid fraud statutes to include the violation of an administrative regulation. *Healthscript, Inc. v. State,* 740 N.E.2d 562, 2000 Ind. App. LEXIS 2027 (2000), transfer granted, 753 N.E.2d 6, 2001 Ind. LEXIS 182 (2001), aff'd in part and remanded in part, 770 N.E.2d 810, 2002 Ind. LEXIS 545 (2002).

   Cited:

   *Healthscript, Inc. v. State,* 724 N.E.2d 265, 2000 Ind. App. LEXIS 179 (2000).

**Research References**



BURNS INDIANA STATUTES ANNOTATED
© 2010 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Statutes current through P.L.1-2010 thru P.L.36-2010, P.L.43-2010 thru P.L.58-2010, P.L.62-2010, P.L.73-2010, P.L.75-2010, P.L.78-2010, P.L.79-2010, P.L.82-2010, P.L.87-2010, P.L.93-2010 thru P.L.96-2010, P.L.99-2010 thru P.L.101-2010, P.L.103-2010 thru P.L.105-2010, P.L.107-2010, and P.L.109-2010 thru P.L.112-2010 of the 2010 Second Regular Session ***
*** Annotations current through January 28, 2010 ***

Title 12  Human Services
Article 15  Medicaid
Chapter 24  Theft; Kickbacks and Bribes

*Burns Ind. Code Ann. § 12-15-24-2*  (2010)

**12-15-24-2.  Violations — Penalty.**

A person who furnishes items or services to an individual for which payment is or may be made under this chapter and who solicits, offers, or receives a:

**(1)** Kickback or bribe in connection with the furnishing of the items or services or the making or receipt of the payment; or

**(2)** Rebate of a fee or charge for referring the individual to another person for the furnishing of items or services;

commits a Class A misdemeanor.

**HISTORY:** P.L.2-1992, § 9.

**NOTES: Cross References.**

Penalties for misdemeanors, IC 35-50-1, IC 35-50-3, *IC 35-50-5-2.*

**C**

West's Annotated Indiana Code Currentness
  Title 34. Civil Procedure (Refs & Annos)
    📁 Article 6. Definitions
      📁 Chapter 2. Definitions
        ➡ 34-6-2-6 "Aggrieved person"

Sec. 6. "Aggrieved person", for purposes of IC 34-24-2, means any of the following:

  (1) A person who has an interest in property or in an enterprise that:

    (A) is the object of corrupt business influence (IC 35-45-6-2); or

    (B) has suffered damages or harm as a result of corrupt business influence (IC 35-45-6-2).

  (2) An individual whose personal safety is threatened by criminal gang (as defined in section 32 of this chapter) activity.

  (3) An individual or a business whose property value or business activity is negatively affected due to criminal gang (as defined in section 32 of this chapter) activity.

  (4) A political subdivision in which criminal gang (as defined in section 32 of this chapter) activity negatively affects the property values or business activity of the political subdivision or the personal safety of the political subdivision's residents.

  (5) The state.

CREDIT(S)

As added by P.L.1-1998, SEC.1.

HISTORICAL AND STATUTORY NOTES

1999 Main Volume

Formerly:

  IC 34-4-30.5-1.

  Acts 1980, P.L.199, SEC.1.

  P.L.308-1985, SEC.1.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**C**

West's Annotated Indiana Code Currentness
  Title 34. Civil Procedure (Refs & Annos)
    ⁴⊞ Article 24. Civil Proceedings Related to Criminal Activities
      ⁴⊞ Chapter 2. Civil Remedies for Racketeering Activity
        → **34-24-2-1 Injunctive relief from corrupt business influence; action by prosecuting attorney**

Sec. 1. The prosecuting attorney in a county in which the violation occurs may bring an action under this section to enjoin a violation of IC 35-45-6-2 (corrupt business influence). An action under this section may be brought in any circuit or superior court in a county in which the violation occurs. If the court finds by a preponderance of the evidence that a violation of IC 35-45-6-2 has occurred, the court may:

(1) order a defendant to divest the defendant of any interest in any enterprise or property;

(2) impose reasonable restrictions upon the future activities or investments of a defendant, including prohibiting a defendant from engaging in the same type of endeavor as the enterprise in which the defendant was engaged in violation of IC 35-45-6-2;

(3) order the dissolution or reorganization of any enterprise;

(4) order the suspension or revocation of a license, permit, or prior approval granted to any enterprise by any agency of the state;

(5) order the forfeiture of the charter of a corporation organized under the laws of Indiana, or the revocation of a certificate authorizing a foreign corporation to conduct business within the state, upon finding that:

  (A) the board of directors or a managerial agent acting on behalf of the corporation, in conducting the affairs of the corporation, has authorized or engaged in conduct in violation of IC 35-45-6-2; and

  (B) for the prevention of future criminal activity, the public interest requires the charter of the corporation be forfeited and the corporation dissolved or the certificate revoked; and

(6) make any other order or judgment that the court considers appropriate.

In any order or judgment made by the court under this section, the judge shall make due provision for the rights of innocent persons, including a person having any rights, title, or interest of record in any of the property.

CREDIT(S)

As added by P.L.1-1998, SEC.19.

HISTORICAL AND STATUTORY NOTES

1999 Main Volume

Formerly:

IC 34-4-30.5-2.

Acts 1980, P.L.199, SEC.1.

P.L.211-1991, SEC.3.

CROSS REFERENCES

Controlled substances, jeopardy assessments, see IC 6-7-3-14.
Corrupt business influence, see IC 35-45-6-2.
Injunctions, see IC 34-26-1; Trial Rule 65.
Injunctions and restraining orders, generally, see IC 34-26-1-1.
Inspector general, forfeiture actions, see IC 4-2-7-6.
Payment of legal expenses for unit and municipal corporation officers and employees incurred in defending against civil actions, see IC 36-1-17-2.

LAW REVIEW AND JOURNAL COMMENTARIES

Addressing the Economic Impact of Undocumented Immigration on the American Worker: Private RICO Litigation and Public Policy. Elisabeth J. Sweeney Yu. 20 Notre Dame J.L. Ethics & Pub. Pol'y 909 (2006).

LIBRARY REFERENCES

1999 Main Volume

Injunction ⚎89(2).
WESTLAW Topic No. 212.
C.J.S. Injunctions §§ 133 to 136.

RESEARCH REFERENCES

2009 Electronic Pocket Part Update

Encyclopedias

Ind. Law Encycl. Extortion and Threats § 6.50, Generally; Injunctive Relief.

UNITED STATES SUPREME COURT

Racketeering, civil claims, competitor's alleged defrauding of state tax authority, proximate cause of entrepreneur's lost sales, see Anza v. Ideal Steel Supply Corp., 2006, 126 S.Ct. 1991.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



BURNS INDIANA STATUTES ANNOTATED
© 2010 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

\*\*\* Statutes current through P.L.1-2010 thru P.L.36-2010, P.L.43-2010 thru P.L.58-2010, P.L.62-2010, P.L.73-2010, P.L.75-2010, P.L.78-2010, P.L.79-2010, P.L.82-2010, P.L.87-2010, P.L.93-2010 thru P.L.96-2010, P.L.99-2010 thru P.L.101-2010, P.L.103-2010 thru P.L.105-2010, P.L.107-2010, and P.L.109-2010 thru P.L.112-2010 of the 2010 Second Regular Session \*\*\*
\*\*\* Annotations current through January 28, 2010 \*\*\*

Title 34 Civil Law and Procedure
Article 24 Civil Proceedings Related to Criminal Activities
Chapter 2 Civil Remedies for Racketeering Activity

*Burns Ind. Code Ann. § 34-24-2-6* (2010)

**34-24-2-6. Action for injunctive relief from corrupt business influence.**

(a) An aggrieved person may, in addition to proceeding under section 4 [*IC 34-24-2-4*] of this chapter, bring an action for injunctive relief from corrupt business influence in a circuit or superior court in the county of the aggrieved person's residence, or in a county where any of the affected property or the affected enterprise is located. If the court finds, through a preponderance of the evidence, that the aggrieved person is suffering from corrupt business influence, the court shall make an appropriate order for injunctive relief. This order must be made in accordance with the principles that govern the granting of injunctive relief from threatened loss or damage in other civil cases, except that a showing of special or irreparable damage to the aggrieved person is not required. The court may order injunctive relief only after the execution of a bond by the aggrieved person for an injunction improvidently granted, in an amount established by the court. In addition, the court may order a temporary restraining order or a preliminary injunction, but only after a showing of immediate danger of significant loss or damage to the aggrieved person.

(b) An aggrieved person may bring an action against a person who has violated *IC 35-45-6-1* in a circuit or superior court in the county of the aggrieved person's residence, or in a county where any of the affected property or the affected enterprise is located, for damages suffered as a result of corrupt business influence. Upon a showing by a preponderance of the evidence that the aggrieved person has been damaged by corrupt business influence, the court shall order the person causing the damage through a violation of *IC 35-45-6-2* to pay to the aggrieved person:

(1) an amount equal to three (3) times the person's actual damages;

(2) the costs of the action;

(3) a reasonable attorney's fee; and

(4) any punitive damages awarded by the court and allowable under law.

(c) The defendant and the aggrieved person are entitled to a trial by jury in an action brought under this section (or IC 34-4-30.5-5 before its repeal).

(d) In addition to any rights provided under section 4 of this chapter, an aggrieved person has a right or claim to forfeited property or to the proceeds derived from forfeited property superior to any right or claim the state has in the same property or proceeds.

(e) If the state is an aggrieved person, the attorney general and the inspector general have concurrent jurisdiction with the prosecuting attorney to bring an action under this section.

**HISTORY:** P.L.1-1998, § 19; P.L.222-2005, § 44.

**NOTES:**

**LexisNexis 50 State Surveys, Legislation & Regulations**

Organized Crime

**Notes to Decisions**

Aggrieved Persons. Applicability. Basis for Injunction. Construction With Other Laws. Evidence. Proximate Cause. Securities Act Violations.

**Aggrieved Persons.**

Investors in an equipment leasing program were not "aggrieved persons" entitled to sue under this chapter, where the investors and the attorney they sued were all members of the enterprise, and there was no evidence that the investors acquired an interest in the program's proposed corporate entity when they made their investments. *Ackerman v. Schwartz, 733 F. Supp. 1231, 1989 U.S. Dist. LEXIS 16521 (N.D. Ind. 1989), aff'd in part, rev'd in part, 947 F.2d 841, 1991 U.S. App. LEXIS 26906 (7th Cir. Ind. 1991).*

**Applicability.**

Indiana's Rackeeteering Influenced and Corrupt Organizations Act cannot be construed as simply providing a method to resolve intramural disputes among racketeers. *Ackerman v. Schwartz, 733 F. Supp. 1231, 1989 U.S. Dist. LEXIS 16521 (N.D. Ind. 1989), aff'd in part, rev'd in part, 947 F.2d 841, 1991 U.S. App. LEXIS 26906 (7th Cir. Ind. 1991).*

Because contract law and criminal law, along with their concomitant remedies, were exempt from the preemption provision of the Indiana Uniform Trade Secrets Act, *IC 24-2-3-1(c)*, a contemporaneous action for civil remedy of treble damages under Indiana's Racketeer Influenced and Corrupt Organizations statute, *IC 34-24-2-6(b)*, which was premised on a petitioner's being a victim of a defendant's pattern of criminal activity, was not preempted. *AGS Capital Corp. v. Prod. Action Int'l, LLC, 884 N.E.2d 294, 2008 Ind. App. LEXIS 725 (2008).*

In consideration of the purpose and goals of the entire Indiana Racketeer Influenced and Corrupt Organizations (RICO) framework, the civil remedy portion, *IC 34-24-2-6(b)*, providing for a private action, is a derivative of the criminal law; preemption provision of the Indiana Uniform Trade Secrets Act, *IC 24-2-3-1(c)*, does not preempt such a RICO action. *AGS Capital Corp. v. Prod. Action Int'l, LLC, 884 N.E.2d 294, 2008 Ind. App. LEXIS 725 (2008).*

**Basis for Injunction.**

Although a preliminary injunction awarded under *IC 34-24-2-6(a)* was incorrectly based on a finding that the applicant had been damaged by a corporation's corrupt business influence, the findings supported the trial court's ultimate conclusion when applied to the correct standard for a preliminary injunction under the Indiana Racketeer Influenced and Corrupt Organizations statute, which was that there was a showing of immediate danger of significant loss or damage to the aggrieved person. *AGS Capital Corp. v. Prod. Action Int'l, LLC, 884 N.E.2d 294, 2008 Ind. App. LEXIS 725 (2008).*

**Construction With Other Laws.**

Permitting an Indiana Racketeer Influenced and Corrupt Organizations claim along with an Indiana Uniform Trade Secrets Act claim appropriately places a disincentive of sizable magnitude to potential offenders, thereby providing greater protection for the integrity of Indiana businesses; by allowing both claims to proceed, a plaintiff is not forced to elect remedies only to later be told that the items sought to be protected are not the type of trade secrets safeguarded under the act. *AGS Capital Corp. v. Prod. Action Int'l, LLC, 884 N.E.2d 294, 2008 Ind. App. LEXIS 725 (2008).*

Indiana Uniform Trade Secrets Act's preemption provision, *IC 24-2-3-1(c)*, did not preempt a civil Racketeer Influenced and Corrupt Organizations claim because that claim was an additional punishment made available by the gen-

 **LexisNexis®**

LEXSTAT INCODE 34-24-3-1

BURNS INDIANA STATUTES ANNOTATED
© 2010 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

\*\*\* Statutes current through P.L.1-2010 thru P.L.36-2010, P.L.43-2010 thru P.L.58-2010, P.L.62-2010, P.L.73-2010,
P.L.75-2010, P.L.78-2010, P.L.79-2010, P.L.82-2010, P.L.87-2010, P.L.93-2010 thru P.L.96-2010, P.L.99-2010 thru
P.L.101-2010, P.L.103-2010 thru P.L.105-2010, P.L.107-2010, and P.L.109-2010 thru P.L.112-2010 of the 2010
Second Regular Session \*\*\*
\*\*\* Annotations current through January 28, 2010 \*\*\*

Title 34  Civil Law and Procedure
Article 24  Civil Proceedings Related to Criminal Activities
Chapter 3  Treble Damages Allowed in Certain Civil Actions by Crime Victims

*Burns Ind. Code Ann. § 34-24-3-1*  (2010)

**34-24-3-1.  Damages in civil action.**

If a person suffers a pecuniary loss as a result of a violation of IC 35-43, *IC 35-42-3-3*, *IC 35-42-3-4*, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:

(1) An amount not to exceed three (3) times the actual damages of the person suffering the loss.

(2) The costs of the action.

(3) A reasonable attorney's fee.

(4) Actual travel expenses that are not otherwise reimbursed under subdivisions (1) through (3) and are incurred by the person suffering loss to:

(A) have the person suffering loss or an employee or agent of that person file papers and attend court proceedings related to the recovery of a judgment under this chapter; or

(B) provide witnesses to testify in court proceedings related to the recovery of a judgment under this chapter.

(5) A reasonable amount to compensate the person suffering loss for time used to:

(A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or

(B) travel to and from activities described in clause (A).

(6) Actual direct and indirect expenses incurred by the person suffering loss to compensate employees and agents for time used to:

(A) file papers and attend court proceedings related to the recovery of a judgment under this chapter; or

(B) travel to and from activities described in clause (A).

(7) All other reasonable costs of collection.

**HISTORY:** P.L.1-1998, § 19.

**NOTES:**



C
West's Annotated Indiana Code Currentness
  Title 35. Criminal Law and Procedure
    Article 41. Substantive Criminal Provisions (Refs & Annos)
      Chapter 5. Offenses of General Applicability
      ➡ 35-41-5-2 Conspiracy

Sec. 2. (a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. However, a conspiracy to commit murder is a Class A felony.

(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

(c) It is no defense that the person with whom the accused person is alleged to have conspired:

  (1) has not been prosecuted;

  (2) has not been convicted;

  (3) has been acquitted;

  (4) has been convicted of a different crime;

  (5) cannot be prosecuted for any reason; or

  (6) lacked the capacity to commit the crime.

CREDIT(S)

As added by Acts 1976, P.L.148, SEC.1. Amended by Acts 1977, P.L.340, SEC.23.

HISTORICAL AND STATUTORY NOTES

2004 Main Volume

Acts 1976, P.L.148, Sec.1, eff. Oct. 1, 1977.

Acts 1977, P.L.340, Sec.23, eff. Oct. 1, 1977, deleted a legislatively supplied section heading; and rewrote Subsec. (a) which prior thereto read:

"A person who, with intent to commit a felony, agrees with another person to commit that felony commits a felony of the same class as the felony he intended to commit. However, a conspiracy to commit a capital felony is a Class A felony".

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



C
West's Annotated Indiana Code <u>Currentness</u>
  Title 35. Criminal Law and Procedure
    Article 43. Offenses Against Property
      Chapter 4. Theft, Conversion, and Receiving Stolen Property
      → 35-43-4-1 Definitions

Sec. 1. (a) As used in this chapter, "exert control over property" means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property.

(b) Under this chapter, a person's control over property of another person is "unauthorized" if it is exerted:

  (1) without the other person's consent;

  (2) in a manner or to an extent other than that to which the other person has consented;

  (3) by transferring or encumbering other property while failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of that other property;

  (4) by creating or confirming a false impression in the other person;

  (5) by failing to correct a false impression that the person knows is influencing the other person, if the person stands in a relationship of special trust to the other person;

  (6) by promising performance that the person knows will not be performed;

  (7) by expressing an intention to damage the property or impair the rights of any other person; or

  (8) by transferring or reproducing:

    (A) recorded sounds; or

    (B) a live performance;

without consent of the owner of the master recording or the live performance, with intent to distribute the reproductions for a profit.

(c) As used in this chapter, "receiving" means acquiring possession or control of or title to property, or lending on the security of property.

CREDIT(S)

As added by Acts 1976, P.L.148, SEC.3. Amended by Acts 1977, P.L.340, SEC.44; Acts 1979, P.L.300, SEC.1; <u>P.L.180-1991, SEC.7.</u>

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



C
West's Annotated Indiana Code Currentness
  Title 35. Criminal Law and Procedure
    Article 43. Offenses Against Property
      Chapter 4. Theft, Conversion, and Receiving Stolen Property
        → **35-43-4-2 Theft; receiving stolen property**

Sec. 2. (a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony. However, the offense is a Class C felony if:

  (1) the fair market value of the property is at least one hundred thousand dollars ($100,000); or

  (2) the property that is the subject of the theft is a valuable metal (as defined in IC 25-37.5-1-1) and:

    (A) relates to transportation safety;

    (B) relates to public safety; or

    (C) is taken from a:

      (i) hospital or other health care facility;

      (ii) telecommunications provider;

      (iii) public utility (as defined in IC 32-24-1-5.9(a)); or

      (iv) key facility;

and the absence of the property creates a substantial risk of bodily injury to a person.

(b) A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony. However, the offense is a Class C felony if:

  (1) the fair market value of the property is at least one hundred thousand dollars ($100,000); or

  (2) the property that is the subject of the theft is a valuable metal (as defined in IC 25-37.5-1-1) and:

    (A) relates to transportation safety;

    (B) relates to public safety; or

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(C) is taken from a:

(i) hospital or other health care facility;

(ii) telecommunications provider;

(iii) public utility (as defined in IC 32-24-1-5.9(a)); or

(iv) key facility;

and the absence of the property creates a substantial risk of bodily injury to a person.

CREDIT(S)

As added by Acts 1976, P.L.148, SEC.3. Amended by Acts 1977, P.L.340, SEC.45; Acts 1979, P.L.300, SEC.2; P.L.320-1985, SEC.1; P.L.158-2009, SEC.8.

HISTORICAL AND STATUTORY NOTES

2004 Main Volume

Acts 1976, P.L.148, Sec.3, eff. Oct. 1, 1977.

Acts 1977, P.L.340, Sec.45, eff. Oct. 1, 1977, deleted a legislatively supplied section heading; and rewrote the section, which prior thereto read:

"A person who, with intent either (i) to accept, use, or withhold property of another person so as to appropriate any portion of its value or benefit or (ii) to return property of another person only after payment of a reward or other consideration, knowingly or intentionally exerts control over that property either:

"(1) in a manner or to an extent other than that to which the other person has consented:

"(2) by creating or confirming a false impression in the other person; .

"(3) by transferring or encumbering other property while failing to disclose a lien, adverse claim, or other legal impediment to the enjoyment of that other property;

"(4) by failing to correct a false impression that he knows is influencing the other person if he stands in a relationship of special trust to that person;

"(5) by promising performance that he knows will not be performed; or

"(6) by expressing an intention to injure any other person or to damage the property or impair the rights of any other person;

"commits a Class D felony."

Acts 1979, P.L.300, Sec.2, added Subsec. (b).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

West's Annotated Indiana Code

Title 35. Criminal Law and Procedure
Article 43. Offenses Against Property
**Chapter 5. Forgery, Fraud, and Other Deceptions**

IC 35-43-5-7.1
**35-43-5-7.1 Medicaid fraud**
Currentness

Sec. 7.1. (a) Except as provided in subsection (b), a person who knowingly or intentionally:

(1) files a Medicaid claim, including an electronic claim, in violation of IC 12-15;

(2) obtains payment from the Medicaid program under IC 12-15 by means of a false or misleading oral or written statement or other fraudulent means;

(3) acquires a provider number under the Medicaid program except as authorized by law;

(4) alters with the intent to defraud or falsifies documents or records of a provider (as defined in 42 CFR 1000.30) that are required to be kept under the Medicaid program; or

(5) conceals information for the purpose of applying for or receiving unauthorized payments from the Medicaid program;

commits Medicaid fraud, a Class D felony.

(b) The offense described in subsection (a) is a Class C felony if the fair market value of the offense is at least one hundred thousand dollars ($100,000).

**Credits**

As added by P.L.10-1994, SEC.8. Amended by P.L.273-1999, SEC.179; P.L.1-2006, SEC.531, eff. Mar. 24, 2006.

**Editors' Notes**

**VALIDITY**

<This section has been held unconstitutional in the case of Healthscript, Inc. v. State, 2002, 770 N.E.2d 810. See Notes to Decisions, post.>

**Notes of Decisions (7)**

▷
West's Annotated Indiana Code Currentness
  Title 35. Criminal Law and Procedure
    ⁀🖻 Article 45. Offenses Against Public Health, Order, and Decency
      🖻 Chapter 6. Racketeer Influenced and Corrupt Organizations
        → 35-45-6-1 Definitions

Sec. 1. (a) The definitions in this section apply throughout this chapter.

(b) "Documentary material" means any document, drawing, photograph, recording, or other tangible item containing compiled data from which information can be either obtained or translated into a usable form.

(c) "Enterprise" means:

  (1) a sole proprietorship, corporation, limited liability company, partnership, business trust, or governmental entity; or

  (2) a union, an association, or a group, whether a legal entity or merely associated in fact.

(d) "Pattern of racketeering activity" means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. However, the incidents are a pattern of racketeering activity only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity.

(e) "Racketeering activity" means to commit, to attempt to commit, to conspire to commit a violation of, or aiding and abetting in a violation of any of the following:

  (1) A provision of IC 23-19, or of a rule or order issued under IC 23-19.

  (2) A violation of IC 35-45-9.

  (3) A violation of IC 35-47.

  (4) A violation of IC 35-49-3.

  (5) Murder (IC 35-42-1-1).

  (6) Battery as a Class C felony (IC 35-42-2-1).

  (7) Kidnapping (IC 35-42-3-2).

  (8) Human and sexual trafficking crimes (IC 35-42-3.5).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(9) Child exploitation (IC 35-42-4-4).

(10) Robbery (IC 35-42-5-1).

(11) Carjacking (IC 35-42-5-2).

(12) Arson (IC 35-43-1-1).

(13) Burglary (IC 35-43-2-1).

(14) Theft (IC 35-43-4-2).

(15) Receiving stolen property (IC 35-43-4-2).

(16) Forgery (IC 35-43-5-2).

(17) Fraud (IC 35-43-5-4(1) through IC 35-43-5-4(10)).

(18) Bribery (IC 35-44-1-1).

(19) Official misconduct (IC 35-44-1-2).

(20) Conflict of interest (IC 35-44-1-3).

(21) Perjury (IC 35-44-2-1).

(22) Obstruction of justice (IC 35-44-3-4).

(23) Intimidation (IC 35-45-2-1).

(24) Promoting prostitution (IC 35-45-4-4).

(25) Professional gambling (IC 35-45-5-3).

(26) Maintaining a professional gambling site (IC 35-45-5-3.5(b)).

(27) Promoting professional gambling (IC 35-45-5-4).

(28) Dealing in or manufacturing cocaine or a narcotic drug (IC 35-48-4-1).

(29) Dealing in or manufacturing methamphetamine (IC 35-48-4-1.1).

(30) Dealing in a schedule I, II, or III controlled substance (IC 35-48-4-2).

(31) Dealing in a schedule IV controlled substance (IC 35-48-4-3).

(32) Dealing in a schedule V controlled substance (IC 35-48-4-4).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(33) Dealing in marijuana, hash oil, or hashish (IC 35-48-4-10).

(34) Money laundering (IC 35-45-15-5).

(35) A violation of IC 35-47.5-5.

(36) A violation of any of the following:

    (A) IC 23-14-48-9.

    (B) IC 30-2-9-7(b).

    (C) IC 30-2-10-9(b).

    (D) IC 30-2-13-38(f).

CREDIT(S)

As added by Acts 1980, P.L.199, SEC.2. Amended by P.L.190-1984, SEC.1; P.L.180-1991, SEC.10; P.L.230-1993, SEC.4; P.L.8-1993, SEC.511; P.L.112-1998, SEC.1; P.L.17-2001, SEC.16; P.L.123-2002, SEC.41; P.L.151-2006, SEC.17; P.L.173-2006, SEC.53; P.L.1-2007, SEC.234, eff. Mar. 30, 2007; P.L.227-2007, SEC.68; P.L.27-2007, SEC.31, eff. July 1, 2008; P.L.3-2008, SEC.253; P.L.143-2009, SEC.48.

HISTORICAL AND STATUTORY NOTES

2004 Main Volume

P.L.190-1984, Sec.1, emerg. eff. March 15, 1984, deleted subdivision designations preceding each definition; inserted, in Cl. (1) of definition of "Enterprise", "corporation,"; and substituted, in definition of "Racketeering activity", "IC 35-47; a violation of IC 35-49-3;" for "IC 35-23-4.1 that is listed in IC 35-23-4.1-18; an offense specified in IC 35-30-10.1-2; an offense specified in IC 35-30-11.1-1;".

P.L.180-1991, Sec.10, changed the statutory reference to (15) Fraud from "IC 35-43-5-4" to "IC 35-43-5-4(1) through IC 35-43-5-4(9)" in the definition of racketeering.

P.L.8-1993, Sec.511, inserted "limited liability company," in the definition of "enterprise".

P.L.230-1993, Sec.4 in the definition of "racketeering activity" substituted "obstruction of justice" for "tampering" and added "carjacking".

1998 Legislation

P.L.112-1998, Sec.1, amended the section by adding Subsec. (30) under the definition of "Racketeering activity".

P.L.112-1998, Sec.3, provides:

"IC 35-45-6-1, as amended by this act, and IC 35-45-15, as added by this act, apply only to offenses committed after

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



LEXSTAT INCODE 35-45-6-2

BURNS INDIANA STATUTES ANNOTATED
© 2010 by Matthew Bender & Company, Inc.,
a member of the LexisNexis Group.
All rights reserved.

*** Statutes current through P.L.1-2010 thru P.L.36-2010, P.L.43-2010 thru P.L.58-2010, P.L.62-2010, P.L.73-2010,
P.L.75-2010, P.L.78-2010, P.L.79-2010, P.L.82-2010, P.L.87-2010, P.L.93-2010 thru P.L.96-2010, P.L.99-2010 thru
P.L.101-2010, P.L.103-2010 thru P.L.105-2010, P.L.107-2010, and P.L.109-2010 thru P.L.112-2010 of the 2010
Second Regular Session ***
*** Annotations current through January 28, 2010 ***

Title 35    Criminal Law and Procedure
Article 45    Offenses Against Public Health, Order and Decency
Chapter 6    Racketeer Influenced and Corrupt Organizations

*Burns Ind. Code Ann. § 35-45-6-2*    (2010)

### 35-45-6-2. Corrupt business influence.

A person:

(1) Who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;

(2) Who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or

(3) Who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence, a Class C felony.

**HISTORY:** *IC 35-45-6-2,* as added by Acts 1980, P.L.199, § 2; P.L.211-1991, § 9.

**NOTES: Cross References.**

Civil remedies for racketeering activity, IC 34-24-2.

Penalties for felonies, IC 35-50-1, IC 35-50-2, *IC 35-50-5-2.*

**LexisNexis 50 State Surveys, Legislation & Regulations**

Organized Crime

**Notes to Decisions**

Constitutionality. Applicability. Attorneys. Conspiracy. Distinctiveness. Double Jeopardy. Evidence. —Sufficient. False Representations. Limitations Period. Out-of-State Crime. Pattern of Racketeering Activity. Preemption. Prostitution. Securities Act Violations.



405 IAC 5-3-3

Page 1

Ind. Admin. Code tit. 405, r. 5-3-3

Indiana Administrative Code Currentness
  Title 405. Office of the Secretary of Family and Social Services
    Article 5. Medicaid Services
      ▣ Rule 3. Prior Authorization
        → **405 IAC 5-3-3 Prior authorization based on false information**

Authority: IC 12-8-6-3; IC 12-8-6-5; IC 12-15-1-10; IC 12-15-21-2; IC 12-15-21-3

Affected: IC 12-15-30-1

Sec. 3. Services authorized on the basis of false information supplied by the provider or the provider's agent that the provider or the provider's agent knew or should have reasonably known to be false are not reimbursable.

*(Office of the Secretary of Family and Social Services; 405 IAC 5-3-3; filed Jul 25, 1997, 4:00 p.m.: 20 IR 3303; readopted filed Jun 27, 2001, 9:40 a.m.: 24 IR 3822; readopted filed Sep 19, 2007, 12:16 p.m.: 20071010-IR-405070311RFA)*

405 IAC 5-3-3, 405 IN ADC 5-3-3

Current with amendments received through the Indiana Weekly Collection, dated January 27, 2010.

(c) 2010 Thomson Reuters

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Ind. Admin. Code tit. 405, r. 5-24-8

Indiana Administrative Code Currentness
  Title 405. Office of the Secretary of Family and Social Services
    Article 5. Medicaid Services
      ⌐ Rule 24. Pharmacy Services
        → **405 IAC 5-24-8 Prior authorization; brand name drugs**

Authority: IC 12-8-6-5; IC 12-15-1-10; IC 12-15-21-2

Affected: IC 12-13-7-3; IC 12-15

Sec. 8. (a) Prior authorization is required for a brand name drug that:

(1) is subject to generic substitution under Indiana law; and

(2) the prescriber has indicated is "brand medically necessary" either orally or in writing on the prescription or drug order.

(b) In order for prior authorization to be granted for a brand name drug in such instances, the prescriber must:

(1) indicate on the prescription or drug order, in the prescriber's own handwriting, the phrase "brand medically necessary"; and

(2) seek prior authorization by substantiating the medical necessity of the brand name drug as opposed to the less costly generic equivalent.

The prior authorization number assigned to the approved request must be included on the prescription or drug order issued by the prescriber or relayed to the dispensing pharmacist by the prescriber if the prescription is orally transmitted. The office may exempt specific drugs or classes of drugs from the prior authorization requirement, based on cost or therapeutic considerations. Prior authorization will be determined in accordance with the provisions of 405 IAC 5-3 and 42 U.S.C. 1396r-8(d)(5).

*(Office of the Secretary of Family and Social Services; 405 IAC 5-24-8; filed Jul 25, 1997, 4:00 p.m.: 20 IR 3346; filed Sep 27, 1999, 8:55 a.m.: 23 IR 319; readopted filed Jun 27, 2001, 9:40 a.m.: 24 IR 3822; readopted filed Sep 19, 2007, 12:16 p.m.: 20071010-IR-405070311RFA)*

405 IAC 5-24-8, 405 IN ADC 5-24-8

Current with amendments received through the Indiana Weekly Collection, dated January 27, 2010.

(c) 2010 Thomson Reuters

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

| | |
|---|---|
| Job | 0995 |
| Sender | cdh |
| Title | Microsoft Word - EXHIBIT INDEX |
| Interface | Network |
| Language | PCLXL |
| Date | 12:44:04 MAY 17 2010 |

**907 KAR 1:672. Provider enrollment, disclosure, and documentation for Medicaid participation.**

RELATES TO: KRS 205.520, 205.560, 205.8451(2),(7),(8),(9), 205.8477, 304.17A-545(5), 311.621-311.643, 42 U.S.C. 1396a(w), 42 C.F.R. 455.100-455.106, 42 C.F.R. 1003.101

STATUTORY AUTHORITY: KRS 194A.030(2), 194A.050(1), 205.520(3), 205.560(12), 42 U.S.C. 1396a, b, c

NECESSITY, FUNCTION, AND CONFORMITY: The Cabinet for Health and Family Services, Department for Medicaid Services, has responsibility to administer the Medicaid Program. KRS 205.520(3) authorizes the cabinet, by administrative regulation, to comply with any requirement that may be imposed or opportunity presented by federal law for the provision of medical assistance to Kentucky's indigent citizenry. KRS 205.560(12) requires the Medical Assistance Program to use the form and guidelines established pursuant to KRS 304.17A-545(5) for assessing the credentials of those applying for participation in the Medical Assistance Program. KRS 205.560(13) requires the department to develop a specific form and establish guidelines for assessing the credentials of dentists applying for participation in the Medical Assistance Program. This administrative regulation establishes provisions related to Medicaid provider enrollment, disclosure, documentation requirements, and guidelines for assessing the credentials of those applying for participation in the Medicaid Program.

Section 1. Definitions. (1) "Applicant" means a person or entity who applies for enrollment as a participating Medicaid provider.

(2) "Cabinet" means the Cabinet for Health and Family Services.

(3) "Claim" means a request for payment under the Medicaid Program that:

(a) Relates to each individual billing submitted by a provider to the department;

(b) Details services rendered to a recipient on a specific date; and

(c) May be a line item of service or all services for one (1) recipient on a bill.

(4) "Credentialed provider" means a provider that is required to complete the credentialing process in accordance with KRS 205.560(12) and (13) and includes the following individuals who apply for enrollment in the Medicaid Program:

(a) A dentist;

(b) A physician;

(c) An audiologist;

(d) A certified registered nurse anesthetist;

(e) An optometrist;

(f) An advance registered nurse practitioner;

(g) A podiatrist;

(h) A chiropractor; or

(i) A physician assistant.

(5) "Department" means the Department for Medicaid Services or its designated agent.

(6) "Disclosure" means the provision of information required by 42 C.F.R. 455.100 through 455.106.

(7) "Evaluation" or "credentialing" means:

(a) A process for collecting and verifying professional qualifications of a health care provider;

(b) An assessment of whether a health care provider meets specified criteria relating to professional competence and conduct; and

(c) A process to be completed before a health care provider may participate in the Medicaid Program on an initial or ongoing basis.

(8) "Exclusion" is defined by 42 C.F.R. 1003.101.

(9) "Furnish" means to provide medical care, services, or supplies that are:

(a) Provided directly by a provider;

(b) Provided under the supervision of a provider; or

(c) Prescribed by a provider.

(10) "Managing employee" means a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over or conducts the day-to-day operation of an institution, entity, organization, or agency.

(11) "Medically necessary" or "medical necessity" means that a covered benefit is determined to be needed in accordance with 907 KAR 3:130.

(12) "Noncredentialed provider" means a provider that is not required to complete the credentialing process in accordance with KRS 205.560(12) and includes any individual or entity not identified in subsection (4) of this section.

(13) "Provider" is defined by KRS 205.8451(7).

(14) "Recipient" is defined by KRS 205.8451(9).

(15) "Reevaluation" or "recredentialing" means a process for identifying a change that may have occurred in a health care provider since the last evaluation or credentialing that may affect the health care provider's ability to perform services.

(16) "Services" means medical care, services, or supplies provided to a Medicaid recipient.

(17) "Subcontractor" means an individual, agency, entity, or organization to which a Medicaid provider or the department's fiscal agent has:

(a) Contracted or delegated some of its management functions or responsibilities of providing medical care or services to its patients; or

(b) Entered into a contract, agreement, purchase order, or lease, including lease of real property, to obtain space, supplies, equipment, or nonmedical services associated with providing services and supplies that are covered under the Medicaid Program.

(18) "Terminated" means a provider's participation in the Medicaid Program has ended and a contractual relationship no longer exists between the provider and the department for the provision of Medicaid-covered services to eligible recipients by the provider or its subcontractor.

(19) "Unacceptable practice" means conduct by a provider which constitutes "fraud" or "provider abuse", as defined in KRS 205.8451(2) or (8), or willful misrepresentation, and includes the practices specified in Section 5 of this administrative regulation.

Section 2. Enrollment Process for Provider Participation in Medicaid. (1) Scope.

(a) The department shall contract only with an individual or entity who meets the conditions of Medicaid provider participation in accordance with 907 KAR 1:671.

(b) The department shall reserve the right to contract or not contract with any potential provider.

(c) An individual or entity that wishes to participate:

1. in the Medicaid Program shall be enrolled as a participating provider prior to being eligible to receive reimbursement in accordance with federal and state laws; and

2. As a KenPAC primary care provider shall meet the provider participation criteria established in 907 KAR 1:320, Kentucky Patient Access and Care System (KenPAC).

(2) To apply for enrollment in the Medicaid Program as a noncredentialed provider, an individual or entity shall:

(a) Complete, and submit to the department, the noncredentialed provider section of a MAP-811, Provider Application; and

(b) Submit of a valid professional license, registration, or certificate that allows the:

1. Individual to provide services within the individual's scope of practice; or



EXHIBIT
B-3

2. Entity to operate or provide services within the entity's scope of practice.

(3) To apply for enrollment in the Medicaid Program as a credentialed provider, an individual shall:

(a) Complete, and submit to the department, the individual provider application section of a MAP-811, Provider Application;

(b) Submit proof of a valid professional license, registration, or certificate that allows the individual to provide services within the individual's scope of practice; and

(c)1. Except for a dentist, submit either:

a. A completed KAPER-1, Kentucky Application for Provider Evaluation and Reevaluation; or

b. Pursuant to 806 KAR 17:480, Section 2(4), the provider application form of the Council for Affordable Quality Healthcare; or

2. If licensed to practice as a dentist, submit a completed Dental Credentialing Form.

(4)(a) Within forty-five (45) days of receipt of a required credentialing form, the department shall notify the health care provider or entity applying for enrollment in the Medicaid Program of any omitted information or questionable information included on the form.

(b) The department shall deny enrollment if the applicant does not:

1. Respond with the requested information within the time period specified in the department's notice of omitted or questionnaire information; or

2. Requests an extension of time that is:

a. Requested during the time period specified in the department's notice; and

b. Grant by the department..

(c) The department may require that an on-site inspection be performed to ascertain compliance with applicable licensure standards established in KRS Chapter 216B, and certification standards, prior to an enrollment determination.

(d)1. The department shall make an enrollment determination within ninety (90) days of receipt of:

a. The completed application documents required by subsection (2) or (3) of this section; and

b. Any additional information requested by the department.

2. The department:

a. May take additional time beyond ninety (90) days to render a decision if necessary for resolution of an issue or dispute; and

b. Shall notify the applicant that a decision will be issued after the ninety (90) day timeframe established in subparagraph 1 of this paragraph if additional time is needed to render a decision.

(5) Approval of enrollment in the Medicaid Program as a participating provider.

(a) Upon approval of enrollment, the department shall issue a provider number that shall be used by the provider solely for billing and identification purposes.

(b) A provider's participation shall begin and end on the dates specified in the notification of approval for program participation, unless the provider's participation is terminated in accordance with this administrative regulation, 907 KAR 1:671, or other applicable state or federal laws.

(6) By enrolling in the Medicaid Program, a provider, the provider's officers, directors, agents, employees, and subcontractors agree to:

(a) Maintain the documentation for claims as required by Section 4 of this administrative regulation;

(b) Provide, upon request, all information regarding the nature and extent of services and claims submitted by, or on behalf of the provider, to the:

1. Cabinet;

2. Department;

3. Attorney General;

4. Auditor of Public Accounts;

5. Secretary of the United States Department of Health and Human Services; or

6. Office of the United States Attorney;

(c) Comply with the disclosure requirements established in Section 3 of this administrative regulation;

(d) Comply with the applicable advance directive requirements established in 42 U.S.C. 1396a(w) regarding the right to accept or reject life-saving medical procedures as described in KRS 311.621 through 311.643;

(e) Accept payment from Medicaid as payment in full for all care, services, benefits, or and supplies billed to the Medicaid Program, except with regard to recipient cost-sharing charges and beneficiary liability, if any;

(f) Submit claims for payment only for care, services, benefits, or supplies;

1. Actually furnished to eligible recipients; and

2. Medically necessary or otherwise authorized by law;

(g) Provide true, accurate, and complete information in relation to any claim for payment;

(h) Permit review or audit of all books or records or, at the discretion of the auditing agency, a sample of books or records related to services furnished and payments received from Medicaid, including recipient histories, case files, and recipient specific data.

Failure to allow access to records may result in the provider's liability for costs incurred by the cabinet associated with the review of records, including food, lodging and mileage;

(i) Not engage in any activity that would constitute an unacceptable practice;

(j) Comply with all terms and provisions contained in the application documents required by subsection (2) or (3) of this section;

(k) Comply with all applicable federal laws, state statutes, and state administrative regulations related to the applicant's provider type and provision of services under the Medicaid Program; and

(l) Bill third party payers in accordance with Medicaid statutes and administrative regulations.

(7) Denial of enrollment or reenrollment in the Medicaid Program.

(a) The department shall deny enrollment if an applicant meets one (1) of the following conditions:

1. Falsely represents, omits, or fails to disclose of any material fact in making an application for enrollments in accordance with subsection (2) or (3) of this section;

2. Is currently suspended, excluded, terminated, or involuntarily withdrawn from participation in any governmental medical insurance program as a result of fraud or abuse of that program;

3. Falsely represents, omits, or fails to disclose any material fact in making an application for a license, permit, certificate, or registration related to a health care profession or business;

4. Has failed to comply with applicable standards in the operation of a health care business or enterprise after having received written notice of noncompliance from:

a. The department; or

b. A state or federal licensing, certifying, or auditing agency;

5. Is under current investigation, indictment or conviction for fraud and abuse or unacceptable practice in:

a. The Kentucky Medicaid Program;

b. Another state's Medicaid Program;

c. The Medicare Program; or

d. Other publicly funded health care program;

6. Fails to comply with any Medicaid policy as specified in the Kentucky statutes or department's administrative regulations;

7. Fails to pay any outstanding debt owed to the department; or

8. Has engaged in an activity that would constitute an unacceptable practice.

(b) If enrollment or reenrollment is denied, the department shall consider reapplication only:

1. If the applicant corrects each deficiency that led to the denial; and

2. After the expiration of a period of exclusion imposed in accordance with 907 KAR 1:671, if applicable.

(c) Notice of denial of enrollment or reenrollment. The department shall send written notice of denial to an applicant's last known address and provide the reason for the denial.

(d) The denial shall be effective upon the date of the written notice.

(8)1. A provider may request limited enrollment for a period of time, not to exceed thirty (30) days, in an exceptional situation for emergency services provided to an eligible recipient.

2. The department shall make an enrollment determination regarding the exceptional circumstances and notify the provider in writing of its decision.

(9) Recredentialing. A credentialed provider currently enrolled in the Medicaid Program shall submit to the department's recredentialing process three (3) years from the date of the provider's initial evaluation or last reevaluation.

Section 3. Required Provider Disclosure. (1) A provider shall comply with the disclosure of information requirements contained in 42 C.F.R. 455.100 through 455.106 and KRS 205.8477.

(2) Time and manner of disclosure. Information disclosed in accordance with 42 C.F.R. 455.100 through 455.106 shall be provided:

(a) Upon application for enrollment;

(b) Annually thereafter; and

(c) Within thirty-five (35) days of a written request by the department or the United States Department of Health and Human Services.

(3) If a provider fails to disclose information required by 42 C.F.R. 455.100 through 455.106 within thirty-five (35) days of the department's written request, the department shall terminate the provider's participation in the Medicaid Program in accordance with 907 KAR 1:671, Section 6, on the day following the last day for submittal of the required information.

(4)(a) A provider shall file an amended, signed ownership and disclosure form with the department within thirty-five (35) days following a change in:

1. Ownership or control;

2. The managing employee or management company; or

3. A provider's federal tax identification number.

(b) Failure to comply with the requirements of paragraph (a) of this subsection may result in termination from the Medicaid Program.

Section 4. Required Provider Documentation. (1) A provider shall maintain documentation of:

(a) Care, services, benefits, or supplies provided to an eligible recipient;

(b) The recipient's medical record or other provider file, as appropriate, which shall demonstrate that the care, services, benefits, or supplies for which the provider submitted a claim were actually performed or delivered;

(c) The diagnostic condition necessitating the service performed or supplies provided; and

(d) Medical necessity as substantiated by appropriate documentation including an appropriate medical order.

(2) A provider who is reimbursed using a cost-based method shall maintain all:

(a) Fiscal and statistical records and reports used for the purpose of establishing rates of payment made in accordance with Medicaid requirements established in 907 KAR Chapters 1, 3, and 4, as applicable; and

(b) Underlying books, records, documentation and reports that formed the basis for the fiscal and statistical records and reports.

(3) All documentation required by this section shall be maintained by the provider for a minimum of five (5) years from the latter of:

(a) The date of final payment for services;

(b) The date of final cost settlement for cost reports; or

(c) The date of final resolution of disputes, if any.

(4) If any litigation, claim, negotiation, audit, investigation, or other action involving the records started before expiration of the five (5) year retention period, the records shall be retained until the latter of:

(a) The completion of the action and resolution of all issues which arise from it; or

(b) The end of the regular five (5) year period.

Section 5. Unacceptable Practice. The activities listed in this section shall constitute unacceptable practice:

(1) Knowingly submitting, or causing the submission of false claims, or inducing, or seeking to induce, a person to submit false claims;

(2) Knowingly making, or causing to be made, or inducing, or seeking to induce a false, fictitious or fraudulent statement or misrepresentation of material fact in claiming a Medicaid payment, or for use in determining the right to payment;

(3) Having knowledge of an event that affects the right of a provider to receive payment and concealing or failing to disclose the event or other material omission with the intention that a payment be made or the payment is made in a greater amount than otherwise owned;

(4) Conversion;

(5) Soliciting or accepting bribes or kickbacks;

(6) Failing to maintain or to make available, for purposes of audit or investigation, administrative and medical records necessary to fully disclose the medical necessity for the nature and extent of the medical care, services and supplies furnished, or to comply with other requirements established in 907 KAR 1:673, Section 2;

(7) Knowingly submitting a claim or accepting payment for medical care, services, or supplies furnished by a provider who has been terminated or excluded from the program;

(8) Seeking or accepting additional payments, for example, gifts, money, donations, or other consideration, in addition to the amount paid or payable under the Medicaid Program for covered medical care, services, or supplies for which a claim is made;

(9) Charging or agreeing to charge or collect a fee from a recipient for covered services which is in addition to amounts paid by the Medicaid Program, except for required copayments recipient liability, if any, required by the Medicaid Program;

(10) Engaging in conspiracy, complicity, or criminal syndications;

(11) Furnishing medical care, services, or supplies that fail to meet professionally recognized standards, or which are found to be non compliant with licensure standards promulgated under KRS Chapter 216B and failing to correct the deficiencies or violation as reported to the department by the Office provider's professional qualifications or licensure;

(12) Discriminating in the furnishing of medical care, services, or supplies as prohibited by 42 U.S.C. 2000d;

(13) Having payments made to or through a factor, either directly or by power of attorney, as prohibited by 42 C.F.R. 447.10;

(14) Offering or providing a premium or inducement to a recipient in return for the recipient's patronage of the provider or other provider to

receive medical care, services, or supplies under the Medicaid Program;

(15) Knowingly failing to meet disclosure requirements;

(16) Unbundling; or

(17) An act committed by a nonprovider on behalf of a provider which, if committed by a provider, would result in the termination of the provider's enrollment in the program.

Section 6. Incorporation by Reference. (1) The following material is incorporated by reference:

(a) "Kentucky Application for Provider Evaluation and Reevaluation", Form KAPER-1, March 2007 edition;

(b) "Map-811, Provider Application", July 2007 edition;

(c) "Dental Credentialing form", July 2007 edition; and

(2) This material may be inspected, copied, or obtained, subject to applicable copyright law, at the Department for Medicaid Services, 275 East Main Street, Frankfort, Kentucky 40621, Monday through Friday, 8 a.m. to 4:30 p.m. (22 Ky.R. 2198; eff. 7-5-96; 34 Ky.R. 446; 1040; 1470; eff. 1-4-2008.)

## 205.8451 Definitions for KRS 205.8451 to 205.8483.

As used in KRS 205.8451 to 205.8483, unless the context otherwise requires:

(1) "Benefit" means the receipt of money, goods, or anything of pecuniary value from the Medical Assistance Program.

(2) "Fraud" means an intentional deception or misrepresentation made by a recipient or a provider with the knowledge that the deception could result in some unauthorized benefit to the recipient or provider or to some other person. It includes any act that constitutes fraud under applicable federal or state law.

(3) "Immediate family member" means a parent, grandparent, spouse, child, stepchild, father-in-law, mother-in-law, son-in-law, daughter-in-law, sibling, brother-in-law, sister-in-law, or grandchild.

(4) "Intentional" or "intentionally" means, with respect to a result or to conduct described by a statute defining an offense, that a person's conscious objective is to cause that result or to engage in that conduct.

(5) "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware that his conduct is of that nature or that the circumstance exists.

(6) "Medical Assistance Program" means the program of medical assistance as administered by the Cabinet for Health and Family Services in compliance with Title XIX of the Federal Social Security Act and any administrative regulations related thereto.

(7) "Provider" means an individual, company, corporation, association, facility, or institution which is providing or has been approved to provide medical services, goods, or assistance to recipients under the Medical Assistance Program.

(8) "Provider abuse" means, with reference to a health care provider, practices that are inconsistent with sound fiscal, business, or medical practices, and that result in unnecessary cost to the Medical Assistance Program established pursuant to this chapter, or that result in reimbursement for services that are not medically necessary or that fail to meet professionally recognized standards for health care. It also includes practices that result in unnecessary cost to the Medical Assistance Program.

(9) "Recipient" means any person receiving or who has received medical assistance benefits.

(10) "Recipient abuse" means, with reference to a medical assistance recipient, practices that result in unnecessary cost to the Medical Assistance Program or the obtaining of goods, equipment, medicines, or services that are not medically necessary, or that are excessive, or constitute flagrant overuse or misuse of Medical Assistance Program benefits for which the recipient is covered.

(11) "Wantonly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would

observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

**Effective:** June 20, 2005

**History:** Amended 2005 Ky. Acts ch. 99, sec. 275, effective June 20, 2005. -- Amended 1998 Ky. Acts ch. 426, sec. 222, effective July 15, 1998. -- Created 1994 Ky. Acts ch. 96, sec. 1, effective July 15, 1994; and ch. 316, sec. 1, effective July 15, 1994.

**205.8461  Unlawful referral practices of provider — Penalties.**

(1) Except as otherwise provided in KRS 205.510 to 205.630, no provider shall knowingly solicit, receive, or offer any remuneration (including any kickback, bribe, or rebate) for furnishing medical assistance benefits or in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any goods, facility, service, or item for which payment may be made pursuant to Title XIX of the Social Security Act.

(2) (a) No provider shall knowingly make, offer, or receive a payment, a rebate of a fee, or a charge for referring a recipient to another provider for furnishing of benefits.

    (b) Any conduct or activity which does not violate or which is protected under the provisions of 42 U.S.C. sec. 1395nn or 42 U.S.C. sec. 1320A-7b(b), as amended, or federal regulations promulgated under those statutes, shall not be deemed to violate the provisions of KRS 205.8451 to 205.8483, and the conduct or activity shall be accorded the same protections allowed under federal law and regulation.

(3) Any person who violates subsection (1) or (2) of this section shall be guilty of a Class A misdemeanor unless the combination or aggregation of offenses is valued at three hundred dollars ($300) or more, in which case it shall be a Class D felony. In addition to any other penalty authorized by law, any person who violates the provisions of subsection (2)(a) of this section shall not be entitled to bill or collect from the recipient or any third-party payor and shall repay any payments due the Commonwealth for services provided which were related to the referral.

> **Effective:** July 15, 1994
>
> **History:** Created 1994 Ky. Acts ch. 96, sec. 6, effective July 15, 1994; and ch. 316, sec. 6, effective July 15, 1994.
>
> **Legislative Research Commission Note** (7/15/94). This statute was enacted by identical sections in two bills (1994 Ky. Acts chs. 96 & 316) which have been codified together.

**205.8463  Fraudulent acts -- Penalties.**

(1)  No person shall knowingly or wantonly devise a scheme or plan a scheme or artifice, or enter into an agreement, combination, or conspiracy to obtain or aid another in obtaining payments from any medical assistance program under this chapter by means of any fictitious, false, or fraudulent application, claim, report, or document submitted to the Cabinet for Health and Family Services, or intentionally engage in conduct which advances the scheme or artifice.

(2)  No person shall intentionally, knowingly, or wantonly make, present, or cause to be made or presented to an employee or officer of the Cabinet for Health and Family Services any false, fictitious, or fraudulent statement, representation, or entry in any application, claim, report, or document used in determining rights to any benefit or payment.

(3)  No person shall, with intent to defraud, knowingly make, or induce, or seek to induce the making of a false statement or false representation of a material fact with respect to the conditions or operations of an institution or facility in order that the institution or facility may qualify, upon initial certification or upon recertification, as a hospital, skilled-nursing facility, intermediate-care facility, home-health agency, or other provider of services to the Medical Assistance Program.

(4)  No person shall, in any matter within the jurisdiction of the Cabinet for Health and Family Services under this chapter, knowingly falsify, conceal, or cover up by any trick, scheme, or device a material fact, or make any false, fictitious, or fraudulent statement or representation, or make or use any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry.

(5)  Any person who violates subsections (1) and (2) of this section shall be guilty of a Class A misdemeanor unless the sum total of benefits or payments claimed in any application, claim, report, or document, or in any combination or aggregation thereof, is valued at three hundred dollars ($300) or more in which case it shall be a Class D felony. Any person who violates the provisions of subsection (3) of this section shall be guilty of a Class C felony. Any person who violates the provisions of subsection (4) of this section shall be guilty of a Class D felony.

Effective: June 20, 2005

History:  Amended 2005 Ky. Acts ch. 99, sec. 279, effective June 20, 2005. -- Amended 1998 Ky. Acts ch. 426, sec. 226, effective July 15, 1998. -- Created 1994 Ky. Acts ch. 96, sec. 7, effective July 15, 1994; and ch. 316, sec. 7, effective July 15, 1994.

**205.8467  Liability of violators -- Payment of penalties to Medicaid trust fund.**

(1)  Any provider who has been found by a preponderance of the evidence in an administrative process, in conformity with any applicable federal regulations and with due process protections, to have knowingly submitted or caused claims to be submitted for payment for furnishing treatment, services, or goods under a medical assistance program provided under this chapter, which payment the provider was not entitled to receive by reason of a violation of this chapter, shall:

    (a)  Be liable for restitution of any payments received in violation of this chapter, and interest at the maximum legal rate pursuant to KRS 360.010 in effect on the date any payment was made, for the period from the date payment was made to the date of repayment to the Commonwealth;

    (b)  Be liable for a civil payment in an amount up to three (3) times the amount of excess payments;

    (c)  Be liable for payment of a civil payment of five hundred dollars ($500) for each false or fraudulent claim submitted for providing treatment, services, or goods;

    (d)  Be liable for payment of legal fees and costs of investigation and enforcement of civil payments; and

    (e)  Be removed as a participating provider in the Medical Assistance Program for two (2) months to six (6) months for a first offense, for six (6) months to one (1) year for a second offense, and for one (1) year to five (5) years for a third offense.

(2)  Civil payments, interest, costs of investigation, and enforcement of the civil remedies recovered on behalf of the Commonwealth under this section shall be remitted to the State Treasurer for deposit in a Medicaid trust fund which is hereby created and shall not lapse. Funds deposited in the Medicaid trust fund shall not be spent until appropriated by the General Assembly for medical assistance services.

(3)  The remedies under this section are separate from and cumulative to any other administrative, civil, or criminal remedies available under federal or state law or regulation.

(4)  The Cabinet for Health and Family Services, in consultation with the Office of the Attorney General, may promulgate administrative regulations, pursuant to KRS Chapter 13A, for the administration of the civil payments contained in this section.

    **Effective:** June 20, 2005

    **History:**  Amended 2005 Ky. Acts ch. 99, sec. 281, effective June 20, 2005. -- Amended 1998 Ky. Acts ch. 426, sec. 228, effective July 15, 1998. -- Created 1994 Ky. Acts ch. 96, sec. 9, effective July 15, 1994; and ch. 316, sec. 9, effective July 15, 1994.

### 367.170 Unlawful acts.

(1) Unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2) For the purposes of this section, unfair shall be construed to mean unconscionable.

**History:** Amended 1976 Ky. Acts ch. 221, sec. 1. -- Created 1972 Ky. Acts ch. 4, sec. 7.

### 367.190 Injunction -- Hearing.

(1) Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by KRS 367.170 to be unlawful, and that proceedings would be in the public interest, he may immediately move in the name of the Commonwealth in a Circuit Court for a restraining order or temporary or permanent injunction to prohibit the use of such method, act or practice. The action may be brought in the Circuit Court of the county in which such person resides or has his principal place of business or in the Circuit Court of the county in which the method, act or practice declared by KRS 367.170 to be unlawful has been committed or is about to be committed; or with consent of the parties may be brought in the Franklin Circuit Court.

(2) Upon application of the Attorney General, a restraining order shall be granted whenever it reasonably appears that any person will suffer immediate harm, loss or injury from a method, act or practice prohibited by KRS 367.170. If the defendant moves for the dissolution of a restraining order issued under this section, the court shall hold a hearing within five (5) business days of the date of service of the defendant's motion to dissolve, unless a delay in hearing the cause is requested by, or otherwise caused by the defendant. If such a hearing is not held within five (5) business days, the restraining order will automatically be dissolved.

(3) In order to obtain a temporary or permanent injunction, it shall not be necessary to allege or prove that an adequate remedy at law does not exist. Further, it shall not be necessary to allege or prove that irreparable injury, loss or damage will result if the injunctive relief is denied.

> **History:** Created 1972 Ky. Acts ch. 4, sec. 9.

### 367.990 Penalties.

(1) Any person who violates the terms of a temporary or permanent injunction issued under KRS 367.190 shall forfeit and pay to the Commonwealth a civil penalty of not more than twenty-five thousand dollars ($25,000) per violation. For the purposes of this section, the Circuit Court issuing an injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the Attorney General acting in the name of the Commonwealth may petition for recovery of civil penalties.

(2) In any action brought under KRS 367.190, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth, a civil penalty of not more than two thousand dollars ($2,000) per violation, or where the defendant's conduct is directed at a person aged sixty (60) or older, a civil penalty of not more than ten thousand dollars ($10,000) per violation, if the trier of fact determines that the defendant knew or should have known that the person aged sixty (60) or older is substantially more vulnerable than other members of the public.

(3) Any person with actual notice that an investigation has begun or is about to begin pursuant to KRS 367.240 and 367.250 who intentionally conceals, alters, destroys, or falsifies documentary material is guilty of a Class A misdemeanor.

(4) Any person who, in response to a subpoena or demand as provided in KRS 367.240 or 367.250, intentionally falsifies or withholds documents, records, or pertinent materials that are not privileged shall be subject to a fine as provided in subsection (3) of this section.

(5) The Circuit Court of any county in which any plan described in KRS 367.350 is proposed, operated, or promoted may grant an injunction without bond, upon complaint filed by the Attorney General to enjoin the further operation thereof, and the Attorney General may ask for and the court may assess civil penalties against the defendant in an amount not to exceed the sum of five thousand dollars ($5,000) which shall be for the benefit of the Commonwealth of Kentucky.

(6) Any person, business, or corporation who knowingly violates the provisions of KRS 367.540 shall be guilty of a violation. It shall be considered a separate offense each time a magazine is mailed into the state; but it shall be considered only one (1) offense for any quantity of the same issue of a magazine mailed into Kentucky.

(7) Any solicitor who violates the provisions of KRS 367.513 or 367.515 shall be guilty of a Class A misdemeanor.

(8) In addition to the penalties contained in this section, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth a civil penalty of not more than the greater of five thousand dollars ($5,000) or two hundred dollars ($200) per day for each and every violation of KRS 367.175.

(9) Any person who shall willfully and intentionally violate any provision of KRS 367.976 to 367.985 shall be guilty of a Class B misdemeanor.

(10) (a) Any person who violates the terms of a temporary or permanent injunction issued under KRS 367.665 shall forfeit and pay to the Commonwealth a penalty of not more than five thousand dollars ($5,000) per violation. For the purposes of this section, the Circuit Court issuing an injunction shall retain jurisdiction, and the cause shall be continued, and in such cases the Attorney General acting in the name of the Commonwealth may petition for recovery of civil penalties;

(b) The Attorney General may, upon petition to a court having jurisdiction under KRS 367.190, recover on behalf of the Commonwealth from any person found to have willfully committed an act declared unlawful by KRS 367.667 a penalty of not more than two thousand dollars ($2,000) per violation; and

(c) Any person who knowingly violates any provision of KRS 367.652, 367.653, 367.656, 367.657, 367.658, 367.666, or 367.668 or who knowingly gives false or incorrect information to the Attorney General in filing statements or reports required by KRS 367.650 to 367.670 shall be guilty of a Class D felony.

(11) Any dealer who fails to provide a statement under KRS 367.760 or a notice under KRS 367.765 shall be liable for a penalty of one hundred dollars ($100) per violation to be collected in the name of the Commonwealth upon action of the Attorney General.

(12) Any dealer or manufacturer who falsifies a statement under KRS 367.760 shall be liable for a penalty not exceeding one thousand dollars ($1,000) to be collected in the name of the Commonwealth upon action by the Attorney General.

(13) Any person who violates KRS 367.805, 367.809(2), 367.811, 367.813(1), or 367.816 shall be guilty of a Class C felony.

(14) Either the Attorney General or the appropriate Commonwealth's attorney shall have authority to prosecute violations of KRS 367.801 to 367.819.

(15) A violation of KRS 367.474 to 367.478 and 367.482 is a Class C felony. Either the Attorney General or the appropriate Commonwealth's attorney shall have authority to prosecute violators of KRS 367.474 to 367.478 and 367.482.

(16) Any person who violates KRS 367.310 shall be guilty of a violation.

(17) Any person, partnership, or corporation who violates the provisions of KRS 367.850 shall be guilty of a Class A misdemeanor.

(18) Any dealer in motor vehicles or any other person who fraudulently changes, sets back, disconnects, fails to connect, or causes to be changed, set back, or disconnected, the speedometer or odometer of any motor vehicle, to effect the sale of the motor vehicle shall be guilty of a Class D felony.

(19) Any person who negotiates a contract of membership on behalf of a club without having previously fulfilled the bonding requirement of KRS 367.403 shall be guilty of a Class D felony.

(20) Any person or corporation who operates or attempts to operate a health spa in violation of KRS 367.905(1) shall be guilty of a Class A misdemeanor.

(21) (a) Any person who violates KRS 367.832 shall be guilty of a Class C felony; and

(b) The appropriate Commonwealth's attorney shall have authority to prosecute felony violations of KRS 367.832.

(22) (a) Any person who violates the provisions of KRS 367.855 or 367.857 shall be guilty of a violation. Either the Attorney General or the appropriate county health department may prosecute violators of KRS 367.855 or 367.857.

(b) The provisions of this subsection shall not apply to any retail establishment if the wholesaler, distributor, or processor fails to comply with the provisions of KRS 367.857.

(23) Notwithstanding any other provision of law, any telemarketing company, telemarketer, caller, or merchant shall be guilty of a Class D felony when that telemarketing company, telemarketer, caller, or merchant three (3) times in one (1) calendar year knowingly and willfully violates KRS 367.46955(15) by making or causing to be made an unsolicited telephone solicitation call to a telephone number that appears in the current publication of the zero call list maintained by the Office of the Attorney General, Division of Consumer Protection.

(24) Notwithstanding any other provision of law, any telemarketing company, telemarketer, caller, or merchant shall be guilty of a Class A misdemeanor when that telemarketing company, telemarketer, caller, or merchant uses a zero call list identified in KRS 367.46955(15) for any purpose other than complying with the provisions of KRS 367.46951 to 367.46999.

(25) (a) Notwithstanding any other provision of law, any telemarketing company, telemarketer, caller, or merchant that violates KRS 367.46951 to 367.46999 shall be assessed a civil penalty of not more than five thousand dollars ($5,000) for each offense.

(b) The Attorney General, or any person authorized to act in his or her behalf, shall initiate enforcement of a civil penalty imposed under paragraph (a) of this subsection.

(c) Any civil penalty imposed under paragraph (a) of this subsection may be compromised by the Attorney General or his or her designated representative. In determining the amount of the penalty or the amount agreed upon in compromise, the Attorney General, or his or her designated representative, shall consider the appropriateness of the penalty to the financial resources of the telemarketing company, telemarketer, caller, or merchant charged, the gravity of the violation, the number of times the telemarketing company, telemarketer, caller, or merchant charged has been cited, and the good faith of the telemarketing company, telemarketer, caller, or merchant charged in attempting to achieve compliance, after notification of the violation.

(d) If a civil penalty is imposed under this subsection, a citation shall be issued which describes the violation which has occurred and states the penalty for the violation. If, within fifteen (15) working days from the receipt of the citation, the affected party fails to pay the penalty imposed, the Attorney General, or any person authorized to act in his or her behalf, shall initiate a civil action to collect the penalty. The civil action shall be taken in the court which has jurisdiction over the location in which the violation occurred.

(26) Any person who violates KRS 367.500 shall be liable for a penalty of two thousand five hundred dollars ($2,500) per violation. Either the Attorney General or the appropriate Commonwealth's attorney may prosecute violations of KRS 367.500.

**Effective:** June 26, 2007

**History:** Amended 2007 Ky. Acts ch. 115, sec. 6, effective June 26, 2007; and ch. 134, sec. 2, effective June 26, 2007. -- Amended 2002 Ky. Acts ch. 21, sec. 8, effective July 15, 2002. -- Amended 1998 Ky. Acts ch. 502, sec. 1, effective July 15, 1998. -- Amended 1994 Ky. Acts ch. 151, sec. 12, effective July 15, 1994; and ch. 329, sec. 8, effective July 15, 1994. -- Amended 1992 Ky. Acts ch. 463, sec. 42, effective July 14, 1992. -- Amended 1990 Ky. Acts ch. 196, sec. 11, effective July 13, 1990; and ch. 304, sec. 11, effective July 13, 1990. -- Amended 1988 Ky. Acts ch. 142, sec. 3, effective July 15, 1988. -- Amended 1986 Ky. Acts ch. 184, sec. 4, effective July 15, 1986. --Amended 1982 Ky. Acts ch. 21, sec. 7, effective July 15, 1982; and ch. 298, sec. 8, effective July 15, 1982; and ch. 315, sec. 2, effective July 15, 1982. -- Amended 1980 Ky. Acts ch. 49, secs. 1, 10, 11, effective July 15, 1980. -- Amended 1978 Ky. Acts ch. 315, sec. 11, effective June 17, 1978; and ch. 316, sec. 10(2), (3), effective June 17, 1978. -- Amended 1976 Ky. Acts ch. 136, sec. 22; and ch. 216, sec. 6; and ch. 330, sec. 2. -- Amended 1974 Ky. Acts ch. 281, sec. 6, effective July 1, 1974 -- Created 1972 Ky. Acts ch. 4, secs. 17(1), (2), and 20(1), (2); ch. 23, sec. 2; and ch. 55, sec. 5.

**Legislative Research Commission Note** (6/26/2007). This section was amended by 2007 Ky. Acts chs. 115 and 134, which do not appear to be in conflict and have been codified together.

**411.184 Definitions -- Punitive damages -- Proof of punitive damages.**

(1) As used in this section and KRS 411.186, unless the context requires otherwise:

    (a) "Oppression" means conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship.

    (b) "Fraud" means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff.

    (c) "Malice" means either conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm.

    (d) "Plaintiff" means any party claiming punitive damages.

    (e) "Defendant" means any party against whom punitive damages are sought.

    (f) "Punitive damages" includes exemplary damages and means damages, other than compensatory and nominal damages, awarded against a person to punish and to discourage him and others from similar conduct in the future.

(2) A plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud or malice.

(3) In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question.

(4) In no case shall punitive damages be awarded for breach of contract.

(5) This statute is applicable to all cases in which punitive damages are sought and supersedes any and all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute.

Effective: July 15, 1988

History:   Created 1988 Ky. Acts ch. 224, sec. 2, effective July 15, 1988.

### 446.070 Penalty no bar to civil recovery.

A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.

Effective: October 1, 1942

History: Recodified 1942 Ky. Acts ch. 208, sec. 1, effective October 1, 1942, from Ky. Stat. sec. 466.

## COMMONWEALTH OF VIRGINIA –APPLICABLE STATUTES

*\*Note that the Virginia Fraud Against Taxpayers Act was amended in 2007 to increase the civil penalties amounts. Therefore, the civil penalties requested by the Commonwealth are civil penalties of up to $10,000 for each false claim as required under the statute before the 2007 amendment.\**

### Virginia Fraud Against Taxpayers Act—Va. Code § 8.01-216.3.

False claims; civil penalty.

A. Any person who:

1. Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

2. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth;

3. Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid;

4. Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

5. Authorizes to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

6. Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

7. Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth;

shall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth.

A person violating this section shall be liable to the Commonwealth for reasonable attorney fees and costs of a civil action brought to recover any such penalties or damages. All such fees and costs shall be paid to the Attorney General's Office by the defendant and shall not be included in any damages or civil penalties recovered in a civil action based on a violation of this section.

B. If the court finds that (i) the person committing the violation of this section furnished officials of the Commonwealth responsible for investigating false claims violations with all information known to the person about the violation within 30 days after the date on which the defendant first

EXHIBIT
B-4

obtained the information; (ii) such person fully cooperated with any Commonwealth investigation of such violation; (iii) at the time such person furnished the Commonwealth with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced with respect to such violation, and (iv) the person did not have actual knowledge of the existence of an investigation into such violation, the court may assess not less than two times the amount of damages that the Commonwealth sustains because of the act of the person. A person violating this section shall also be liable to the Commonwealth for the costs of a civil action brought to recover any such penalty or damages.

C. For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

D. This section shall not apply to claims, records or statements relating to state or local taxes.

(2002, c. 842; 2004, c. 589; 2007, c. 569.)


# CHAPTER 589

*An Act to amend and reenact § 8.01-216.3 of the Code of Virginia, relating to Virginia Fraud Against Taxpayers Act.*

[S 343]

Approved April 12, 2004

Be it enacted by the General Assembly of Virginia:

1. That § 8.01-216.3 of the Code of Virginia is amended and reenacted as follows:

§ 8.01-216.3. False claims; civil penalty.

A. Any person who:

1. Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

2. Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth;

3. Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid;

4. Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

5. Authorizes to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

6. Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

7. Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth;

shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

B. If the court finds that (i) the person committing the violation of this section furnished officials of the Commonwealth responsible for investigating false claims violations with all information known to the person about the violation within ~~thirty~~ *30* days after the date on which the defendant first obtained the information; (ii) such person fully cooperated with any Commonwealth investigation of such violation; (iii) at the time such person furnished the Commonwealth with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced with respect to such violation, and (iv) the person did not have actual knowledge of the existence of an investigation into such violation, the court may assess not less than two times the amount of damages that the Commonwealth sustains because of the act of the person. A person violating this section shall also be liable to the Commonwealth for the costs of a civil action brought to recover any such penalty or damages.

C. For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

D. This section shall not apply to claims, records or statements relating to ~~income taxation as set forth in Title 58.1~~ *state or local taxes.*


## The Virginia Fraud Statute—Va. Code § 32.1-312.

Fraudulently obtaining excess or attempting to obtain excess benefits or payments; penalty.

A. No person, agency or institution, but not including an individual medical assistance recipient of health care, on behalf of himself or others, whether under a contract or otherwise, shall obtain

or attempt to obtain benefits or payments where the Commonwealth directly or indirectly provides any portion of the benefits or payments pursuant to the Plan for Medical Assistance and any amendments thereto as provided for in § 32.1-325, hereafter referred to as "medical assistance" in a greater amount than that to which entitled by means of:

1. A willful false statement;

2. By willful misrepresentation, or by willful concealment of any material facts; or

3. By other fraudulent scheme or device, including, but not limited to, billing for services, drugs, supplies or equipment that were unfurnished or were of a lower quality, or a substitution or misrepresentation of items billed.

B. Any person, agency or institution knowingly violating any of the provisions of subsection A of this section shall be liable for repayment of any excess benefits or payments received, plus interest on the amount of the excess benefits or payments at the rate of 1 1/2 percent each month for the period from the date upon which payment was made to the date upon which repayment is made to the Commonwealth. Such person, agency or institution, in addition to any other penalties provided by law, shall be subject to civil penalties. The state Attorney General may petition the circuit court in the jurisdiction of the alleged offense, to seek an order assessing civil penalties in an amount not to exceed three times the amount of such excess benefits or payments. Such civil penalties shall not apply to any acts or omissions occurring prior to the effective date of this law.

C. A criminal action need not be brought against a person for that person to be civilly liable under this section.

D. Civil penalties shall be deposited in the general fund of the state treasury upon their receipt.

E. A civil action under this section shall be brought (i) within six years of the date on which the violation was committed, or (ii) within three years of the date when an official of the Commonwealth charged with the responsibility to act in the circumstances discovered or reasonably should have discovered the facts material to the cause of action. However, in no event shall the limitations period extend more than 10 years from the date on which the violation was committed.

(1981, c. 255; 1984, c. 781; 2007, c. 569.)


## Virginia Anti-Kickback Statute—Va. Code § 32.1-315.

Solicitation or receipt of remuneration for certain services; offer or payment of remuneration for inducement of such services; penalty.

A. A person shall be guilty of a Class 6 felony and, in addition, may be fined an amount not to exceed $25,000, if he knowingly and willfully solicits or receives any remuneration, including any kickback, bribe or rebate, directly or indirectly, overtly or covertly, in cash or in-kind:

1. In return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under medical assistance; or

2. In return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing or ordering any goods, facility, service or item for which payment may be made in whole or in part under medical assistance.

B. A person shall be guilty of a Class 6 felony and, in addition, may be fined an amount not to exceed $25,000, if he knowingly and willfully offers or pays any remuneration, including any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in-kind to any person to induce such person:

1. To refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made, in whole or in part, under medical assistance; or

2. To purchase, lease, order, or arrange for or recommend purchasing, leasing or ordering any goods, facility, service or item for which payment may be made in whole or in part under medical assistance.

C. Subsections A and B of this section shall not apply to:

1. A discount or other reduction in price obtained by a provider of services or other person under medical assistance, if the reduction in price is properly disclosed and appropriately reflected in the cost claimed or charges made by the provider or other person under medical assistance;

2. Any reasonable compensation paid by an employer to an employee who has a bona fide employment relationship with such employer, for employment in the provision of covered items or services;

3. An agreement by health care providers for the group purchase of equipment, goods, services, or supplies which results in fees paid to an agent of the providers, when such agreement has been presented to and authorized by the Department of Medical Assistance Services on the basis that the agreement will reduce the costs of providers of institutional services; and

4. Any remuneration, payment, business arrangement or payment practice that is not prohibited by 42 U.S.C. § 1320a-7b(b) or by any regulations adopted pursuant thereto.

(1981, c. 255; 1986, c. 551; 2003, c. 312.)